**SMILEY WANG-EKVALL, LLP**
Kyra E. Andrassy, State Bar No. 207959
kandrassy@swelawfirm.com
Sharon Oh-Kubisch, State Bar No. 197573
sokubisch@swelawfirm.com
Michael L. Simon, State Bar No. 300822
msimon@swelawfirm.com
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Telephone: 714 445-1000
Facsimile:  714 445-1002

Attorneys for Robert P. Mosier, Receiver

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| ROBERT P, MOSIER, Federal Equity Receiver for the Church for the Healthy Self aka CHS Trust, CHS Asset Management, Inc., and iCare Financial Solution, Inc.,<br><br>Plaintiffs,<br><br>v.<br><br>MATTHEW ALAN SHELTON,<br><br>Defendant. | Case No.<br><br>**COMPLAINT TO AVOID AND RECOVER FRAUDULENT TRANSFERS** |

　　　　Plaintiff Robert P. Mosier, in his capacity as the federal equity receiver ("Receiver") for The Church for the Healthy Self a/k/a CHS Trust ("CHS"), CHS Asset Management, Inc. ("CAM"), and iCare Financial Solution, Inc. ("iCare" and, together with CHS and CAM, the "Receivership Entities"), alleges as follows:

///
///
///
///

## I. INTRODUCTION

1. Beginning in or about September 2014 and continuing to on or about April 4, 2019, Defendants Kent R.E. Whitney also known as Emerson Ralph ("Whitney"), Ngoc Ha T. Nguyen ("Ha Nguyen"), and David Lee Parrish ("Parrish") (collectively, the "Individual Defendants") utilized the Receivership Entities to orchestrate at least a $33 million Ponzi scheme that primarily targeted the Vietnamese communities of Orange County and San Jose, California.

2. The vast majority of the funds that were raised were misappropriated by Whitney, Parrish and Ha Nguyen, who spent many millions of dollars of investor funds on personal expenses for themselves and for family members and friends. What they did not spend on personal expenses was used to make Ponzi payments to investors. This action is being brought to recover funds that the Receiver alleges were fraudulently transferred to or for the benefit of the Defendant.

## II. JURISDICTION AND VENUE

3. On March 13, 2019, the Securities and Exchange Commission filed a civil enforcement action against CHS, CAM, Whitney and Parrish, initiating case number 8:19-cv-00499 (the "SEC Action"). By order entered on March 14, 2019, the Court appointed the Receiver over CHS and CAM, and the assets of Whitney and Parrish.

4. This Court has jurisdiction over this action pursuant to 28 USC § 1367 because this action is ancillary to the SEC Action, and the receivership is pending before this Court. *See Donell v. Kowell*, 533 F.3d 762, 769 (9th Cir. 2008).

5. This action involves the same series of transactions as the SEC Action.

6. Venue is proper in this district because this action is ancillary to the SEC Action and the receivership remains pending before this Court.

## III. THE PARTIES

7. The Receiver is the duly appointed and acting federal equity receiver of the Receivership Entities.

8. On information and belief, defendant Matthew Alan Shelton ("Shelton" or "Defendant"), at all times herein was and is an individual residing in the State of Florida, County of Palm Beach.

## IV. GENERAL ALLEGATIONS

### A. The SEC Action

9. On March 13, 2019, the SEC filed its original complaint against CHS, CAM, Whitney, and Parrish ("SEC Complaint"), accompanied by an *Ex Parte Application for a Temporary Restraining Order and Orders (1) Freezing Assets; (2) Prohibiting the Destruction of Documents; (3) Granting Expedited Discovery; (4) Requiring Defendants to Surrender Passports; and (4) Requiring Accountings* that, among other things, ordered the defendants to show cause why a preliminary injunction should not be granted.  .

10. The SEC Complaint alleged that the defendants (1) committed fraud in violation of the anti-fraud provisions of the federal securities laws, specifically Section 17(a) of the Securities Act of 1933 [15 U.S.C. § 77q(a)] and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

11. On March 14, 2019, the District Court entered an order appointing the Receiver over CHS and CAM, and the assets of Whitney and Parrish.

12. On September 11, 2019, the SEC amended its original Complaint to add iCare and Ha Nguyen as defendants and to add relief defendants. The SEC Action remains pending.

13. On September 12, 2019, the District Court entered an amended order (1) expanding the Receivership Order in the SEC Action to include Ha Nguyen and iCare, and (2) freezing assets and requiring Ha Nguyen and iCare to provide an accounting.

14. On June 8, 2021, the District Court entered an order in the SEC Action authorizing the Receiver to pursue fraudulent transfer actions.

### B. Whitney's Plea Agreement with the USAO

15. On March 18, 2020, Whitney entered into a plea agreement with the United States Attorney's Office through which he admitted to engaging in a scheme to defraud investors through CHS Trust and related entities, to obtain money or property through false promises or statements, and acting with the intent to defraud. In that plea agreement, Whitney admitted that he was, in fact, guilty of two counts including mail fraud, in violation of Title 18, United States Code, Section 1341, and filing false tax returns for the years 2017 and 2018, in violation of Title 26, United States Code, Section 7206(1).

### C. The Fraudulent History of Whitney

16. Before holding himself out to be a minister, Whitney was a fraudster. On August 29, 2003, Whitney was registered with the Commodity Futures Trading Commission ("CFTC") as a floor broker. From May 2008 through April 2010, Whitney engaged in a scheme to avoid posting more than $96 million of margin calls when placing orders for commodity options traded on the New York Mercantile Exchange and the Chicago Mercantile Exchange. The CFTC sued Whitney on December 10, 2010, and obtained a consent order against him on May 22, 2012, permanently barring him from the commodities industry and imposing a $600,000 civil penalty.

17. In September 2011, Whitney pled guilty to one count of wire fraud in connection with the margin call fraud scheme. *See United States v. Whitney*, Case No. 1:11-cr-108 (N.D. Ill. [Eastern Div.]). As part of his scheme, he obtained more than $600,000 from approximately 10 investors for a purported commodity pool investment and for trading in futures accounts to be held jointly between Whitney and the investors. He misrepresented the use of investor funds, investor returns, and the investment's risk. Whitney misappropriated most of the money he received, generated bogus account statements, and made Ponzi payments. On December 8, 2011, Whitney was sentenced to 44 months imprisonment. Whitney was released from federal custody in June 2014.

D.   **The Operation of CHS**

18. Two months after being released from prison, Whitney became an ordained minister through an on-line program in August 2014.

19. A month later, Whitney formed CHS, purportedly as a nonprofit, religious organization. The Individual Defendants (together, the Receivership Entities and Individual Defendants are referred to as the "Receivership Defendants"), and others acting at their direction used the internet, radio and television, as well as in-person meetings and brochures, to lure investors into a fraudulent investment scheme primarily targeting the Vietnamese communities in Orange County and San Jose, California. Recordings of these appearances were often uploaded to YouTube.

20. In these appearances, CHS representatives, at the direction of Whitney, made the following claims: (1) that CHS Trust, the investment arm of CHS, guaranteed an annual rate of return of 12%; (2) guaranteed return of principal with no risk because the investments were backed by the FDIC and SIPC (Securities Investor Protection Program); (3) that in the past five years the worst return CHS realized was a 1.5% profit for the month of

January 2015; (5) that the traders used by CHS had not lost money in 15 years; and (6) that CHS was audited by KPMG. At the time these statements were made, Whitney knew the statements were false or misleading. CHS did not produce a 12% annual return; despite millions of dollars deposited from CHS investors, little investor money went into any trading accounts in 2018; CHS AM was not formed until 2017, thus the statements regarding the investment performance over the past five years and fifteen years were misleading; and CHS was not audited by KPMG.

21. At the direction of the Individual Defendants and others (depending upon which salesperson the investor had spoken to) and relying upon these false statements, investors wrote checks or gave cash to CHS or iCare, and rolled over retirement, investment, or college savings assets to CAM bank accounts where the funds were commingled and then transferred to CHS.

22. As part of the scheme, Whitney directed that monthly statements be sent to victims that contained false reports of investment returns. Whitney intended to lull victims into believing their money had been invested and was consistent with the false claims made by CHS representatives.

23. The vast majority of investor funds that were deposited into CHS's bank account were misappropriated by the Receivership Defendants, who enriched themselves and used investor funds to finance their lifestyle, including paying for vacations, expensive meals out, and designer clothes for themselves and for their friends. CHS also used approximately $11 million in Ponzi-type payments to older investors, taken from money brought in by new investors. What little was invested was lost in the market.

24. Between May 2, 2015 and March 13, 2019, CHS raised approximately $33 million from investors.

25. The Receivership Defendants misappropriated or dissipated the vast majority of the roughly $33 million raised from investors, except for the over $5 million that was seized just before the filing of the SEC Action. CHS returned approximately $12.8 million of the amount raised to investors through Ponzi payments or by making payments to creditors on their behalf.

**B.   Defendant**

26. During the four calendar years prior to the Receiver's appointment, CHS transferred funds to or for the benefit of Defendant totaling $60,000.00. These transfers were made through the use of a checking account held in the name of CHS at Prestige Community Credit Union ("Transfers"). A list of the Transfers is hereto and incorporated herein as Exhibit "A".

27. Given that the Receivership Entities were operating an investment fraud with no legitimate business in violation of securities laws, there would appear to be no legitimate services that were provided by the Defendant to the Receivership Entities so that no reasonably equivalent value was received for the Transfers.

28. The Receiver has demanded the return of the Transfers from Defendant but not received a response.

**FIRST CLAIM FOR RELIEF**

**(For Avoidance and Recovery of Fraudulent Transfers Pursuant to California Civil Code Section 3439.04(a)(1))**

29. The Receiver realleges and incorporates by this reference paragraphs 1 through 28, above, as though set forth herein in full.

30. During the four calendar years prior to the Receiver's appointment, payments of $60,000.00 were made to or for the benefit of the Defendant by CHS.

31. The payments by CHS to Defendant were made with the actual intent to hinder, delay or defraud its creditors.

32. The payments made to Defendant are avoidable by the Receiver under applicable law, including California Civil Code Section 3439.04(a)(1).

33. The Receiver is entitled to a recovery against Defendant in a sum of not less than $60,000.00, with interest thereon at the legal rate.

## SECOND CLAIM FOR RELIEF

**(For Avoidance and Recovery of Fraudulent Transfers Pursuant to California Civil Code Section 3439.04(a)(2))**

34. The Receiver realleges and incorporates by this reference paragraphs 1 through 33, above, as though set forth herein in full.

35. The Transfers made by CHS to Defendant were made without CHS receiving reasonably equivalent value in exchange for the transfers.

36. At the time the Transfers were made by CHS to or for the benefit of the Defendant, CHS was engaged or was about to engage in a business or a transaction for which its remaining assets were unreasonably small in relation to the business or transaction.

37. At the time CHS made the Transfers, CHS intended to incur, or believed or reasonably should have believed that it would incur debts beyond its ability to pay as such debts became due.

38. The Transfers made to or for the benefit of the Defendant are avoidable by the Receiver under applicable law, including California Civil Code Section 3439.04(a)(2).

39. The Receiver is entitled to recovery against Defendant in a sum of not less than $60,000.00, with interest thereon at the legal rate.

///

///

## THIRD CLAIM FOR RELIEF

### (For Avoidance and Recovery of Fraudulent Transfers Pursuant to California Civil Code Section 3439.05)

40. The Receiver realleges and incorporates by this reference paragraphs 1 through 39, above, as though set forth herein in full.

41. CHS currently has creditors whose claims arose before the Transfers were made.

42. CHS received less than reasonably equivalent value in exchange for the Transfers made to or for the benefit of Defendant.

43. At the time of the Transfers, CHS was insolvent or became insolvent as a result of the Transfers.

44. The Transfers made to or for the benefit of Defendant are avoidable by the Receiver under applicable law, including California Civil Code Section 3439.05.

45. The Receiver is entitled to recovery against Defendant in a sum of not less than $60,000.00, with interest thereon at the legal rate.

## PRAYER

WHEREFORE, the Receiver prays as follows:

1. For judgment against Defendant in the sum of $60,000.00;

2. For interest at the legal rate on the amount of the Transfers from the date of the Transfers;

3. For costs of suit; and

4. For such other and further relief as the Court deems appropriate.

DATED: July 22, 2022          SMILEY WANG-EKVALL, LLP

By: _____
SHARON OH-KUBISCH
Attorneys for Robert P. Mosier, Receiver