**SMILEY WANG-EKVALL, LLP**
Kyra E. Andrassy, State Bar No. 207959
*kandrassy@swelawfirm.com*
Sharon Oh-Kubisch, State Bar No. 197573
*sokubisch@swelawfirm.com*
Timothy W. Evanston, State Bar No. 319342
*tevanston@swelawfirm.com*
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Telephone: 714 445-1000
Facsimile:  714 445-1002

Attorneys for Robert P. Mosier,
Receiver

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| ROBERT P. MOSIER, Federal Equity Receiver for the Church for the Healthy Self aka CHS Trust, CHS Asset Management, Inc., and iCare Financial Solution, Inc., <br><br> Plaintiffs, <br><br> v. <br><br> MATTHEW ALAN SHELTON, an individual, <br><br> Defendant. | Case No. 8:22-cv-01361-JVS(KESx) <br><br> **NOTICE OF MOTION AND MOTION FOR ENTRY OF DEFAULT JUDGMENT; DECLARATIONS OF SHARON OH-KUBISCH AND ROBERT P. MOSIER IN SUPPORT THEREOF** <br><br> **Hearing Information:** <br> **DATE:  January 30, 2023** <br> **TIME:   1:30 p.m.** <br> **CTRM:  10C** <br> **JUDGE:  Hon. James V. Selna** |

**TO THE HONORABLE JAMES V. SELNA, UNITED STATES DISTRICT JUDGE, AND ALL OTHER PARTIES IN INTEREST:**

Robert P. Mosier, the receiver ("Receiver") for The Church for the Healthy Self aka CHS Trust ("CHS"), iCare Financial Solution, Inc., CHS Asset Management, Inc., and the assets of Kent R.E. Whitney, David Lee Parrish, and Ngoc Ha T. Nguyen and the plaintiff in this action, submits the following memorandum of points and authorities and the declaration of Sharon Oh-Kubisch in support of his motion (the "Motion") for entry of a default judgment against defendant Matthew Alan Shelton

**SMILEY WANG-EKVALL, LLP**
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

(the "Defendant") pursuant to Federal Rule of Civil Procedure 55(b).  The Receiver seeks entry of a judgment for the first cause of action for avoidance and recovery of voidable transfers pursuant to California Civil Code § 3439.04(a)(1) in favor of the Receiver in the amount of $60,000.00 along with pre-judgment interest at the rate of seven percent (7%) per year, as calculated from the date of each respective Transfer to Defendant, and post judgment interest, compounded annually, from the date of judgment until paid.  In support of this Motion, the Receiver submits the following memorandum of points and authorities and the declarations of Sharon Oh-Kubisch and Robert P. Mosier in support thereof.

## I.     INTRODUCTION

This is a fraudulent transfer action for transfers made for the benefit of the Defendant through payments made directly to him through the use of a checking account held in the name of CHS at Prestige Community Credit Union (the "Transfers").  The amount of Transfers from the Receivership Entities to or for the benefit of Defendant amount to a sum of not less than $60,000.00 and without the Defendant providing reasonably equivalent value to CHS in exchange for the Transfers.  The Defendant was served by publication and has failed to respond to the complaint, and the Clerk entered his default on November 14, 2022.  Accordingly, the Receiver seeks entry of a judgment in an amount equal to the value of the Transfers.

## II.    FACTUAL BACKGROUND

In March 2019, the Securities and Exchange Commission ("SEC") commenced a civil enforcement action against CHS, CHS Asset Management, Inc., Kent R.E. Whitney, and David Parrish.  The Court

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000  •  Fax 714 445-1002

1    appointed the Receiver over all four of the defendants.  It later added iCare

2    Financial Solution, Inc., and Ngoc Ha T. Nguyen as receivership defendants.

3           Beginning in or about September 2014 and continuing to April 4, 2019,

4    Kent R.E. Whitney ("Whitney"), Ngoc Ha T. Nguyen ("Ha Nguyen"), and

5    David Lee Parrish ("Parrish") (collectively, the "Individual Defendants")

6    utilized the Receivership Entities to orchestrate at least a $33 million Ponzi

7    scheme that primarily targeted the Vietnamese communities of Orange

8    County and San Jose, California.  The vast majority of the funds that were

9    raised were misappropriated by Whitney, Parrish and Ha Nguyen, who spent

10   many millions of dollars of investor funds on personal expenses for

11   themselves and for family members and friends.

12          During the four calendar years prior to the Receiver's appointment,

13   CHS transferred funds to or for the benefit of Defendant totaling $60,000.00.

14   The Transfers totaling $60,000.00 were made through the use of a checking

15   account held in the name of CHS at Prestige Community Credit Union.  The

16   bank statement for July 2018 indicates that CHS made a payment of

17   $10,000.00 for the Defendant's benefit by wire transfer.  A copy of the July

18   2018 bank statement is attached as Exhibit "1" to the Declaration of Sharon

19   Oh-Kubisch in support of the Application ("Oh-Kubisch Decl.").  The

20   remaining $50,000.00 of the Transfers were made by five checks drawn on

21   CHS's bank account for the Defendant's benefit which consisted of the

22   following: (1) a check in the amount of $10,000.00 that cleared CHS's bank

23   account on September 12, 2018; (2) a check in the amount of $10,000.00

24   that cleared CHS's bank account on October 10, 2018; (3) a check in the

25   amount of $10,000.00 that cleared CHS's bank account on December 19,

26   2018; (4) a check in the amount of $10,000.00 that cleared CHS's bank

27   account on January 3, 2019; and (5) a check in the amount of $10,000.00

28

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

2929016.1

3

NOTICE OF MOTION AND MOTION

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1   that cleared CHS's bank account on February 12, 2019.  Copies of the

2   checks are attached as Exhibit "2" to the Oh-Kubisch Decl.

3       Prior to filing the complaint, the Receiver sent a demand letter to

4   Defendant.  The demand letter (without attached exhibits) is attached hereto

5   as Exhibit "3" to the Oh-Kubisch Decl.  No response was ever received by

6   Defendant.  As such, the Receiver was left with no other choice but to file a

7   complaint.  A copy of the complaint (the "Complaint") (without exhibits) is

8   attached as Exhibit "4" to the Oh-Kubisch Decl.  The Complaint includes

9   claims for avoidance and recovery of the Transfers as fraudulent transfers

10  pursuant to California Civil Code ("CCC") Sections 3439.04(a)(1),

11  3439.04(a)(2), and 3439.05.

12      On September 27, 2022, the Receiver served the complaint via

13  publication.  Service was deemed complete on October 21, 2022, giving

14  Defendant until November 10, 2022, to respond to the Complaint.  On

15  November 17, 2022, upon the request of the Receiver, the Clerk of the Court

16  entered the Defendant's default in this action.  A copy of the default is

17  attached as Exhibit "5" to the Oh-Kubisch Decl.

18

19  **III.    LEGAL ARGUMENT**

20      When a nonmonetary judgment is sought, FRCP 55(b) provides that

21  "the party must apply to the court for a default judgment.  If the party against

22  whom a default judgment is sought has appeared personally or by a

23  representative, that party or its representative must be served with written

24  notice of the application at least 7 days before the hearing."  If the defendant

25  fails to answer a complaint, then "[w]ell-pleaded allegations are taken as

26  admitted on a default judgment."  *Benny v. Piper*, 799 F.2d 489, 495 (9th Cir.

27  1986).  The concept that a complaint's allegations are taken as admitted is

28  effectuated even if the plaintiff's allegations are pleaded on information and

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1  belief because they state facts primarily within a defendant's knowledge.

2  *See Fong v. United States*, 300 F.2d 400, 409 (9th Cir. 1962).  Moreover, in

3  granting default judgments, courts are not required to make detailed findings

4  of fact.  *See Fair Housing of Marin v. Combs (In re Combs)*, 285 F.3d 899,

5  906 (9th Cir. 2002).  Of course, the Court's decision whether to grant or deny

6  a default judgment is discretionary in nature, however, in applying this

7  discretionary standard, default judgments are more often granted than

8  denied.  *See Elektra Ent. Group Inc., v. Crawford*, 226 F.R.D. 388, 392 (C.D.

9  Cal. 2005); *PepsiCo v. Triunfo-Mex, Inc*., 189 F.R.D. 431, 432 (C.D. Cal.

10  1999).

11      In the Ninth Circuit, "factors which may be considered by courts in

12  exercising discretion as to the entry of a default judgment include: (1) the

13  possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive

14  claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in

15  the action; (5) the possibility of a dispute concerning material facts; (6)

16  whether the default was due to excusable neglect, and (7) the strong policy

17  underlying the Federal Rules of Civil Procedure favoring decisions on the

18  merits."  *Eitel v. McCool*, 782, F.2d 14701, 1471-72 (9th Cir. 1986).

19      **A.    The Default Is Not Due to Excusable Neglect and the Plaintiff**

20          **Will Be Prejudiced If Default Is Not Entered**

21      The Receiver submits that these factors weigh in favor of granting

22  default judgment here.  The vast majority of investor funds that were

23  deposited into CHS's bank account were misappropriated by the

24  Receivership Defendants, who enriched themselves and used investor funds

25  to finance their lifestyle, including paying for vacations, expensive meals out,

26  and designer clothes for themselves and for their friends.  CHS used

27  approximately $3 million of investor funds to make payments to American

28  Express for credit cards in Whitney's individual name.  Up to eighteen

1   individuals were issued credit cards that were billed to Whitney and they

2   collectively charged at least $2.6 million on their respective American

3   Express cards for their personal benefit.  Investor funds were used to pay for

4   the charges made to the accounts.  In addition, Whitney, Parrish, Nguyen,

5   and their friends used money from investors to pay for various personal

6   expenses with checks drawn on CHS's bank account.  It is the investors the

7   Receiver represents who would be prejudiced if the Court denied entry of

8   the Defendant's default, so this factor weighs in favor of the Receiver.

9       **B.**      **The Remaining Factors Weigh in the Receiver's Favor, and**

10          **He Seeks Entry of Default Judgment on the First Cause of**

11          **Action for Voidability of a Fraudulent Transfer**

12          Turning to the merits of the Complaint, the Complaint alleged three

13   causes of action:  (1) voidability of the Transfers pursuant to CCC §

14   3439.04(a)(1) because they were made with "actual intent to hinder, delay,

15   or defraud" CHS' creditors; (2) voidability of the Transfers as a constructively

16   fraudulent transfer CCC § 3439.04(a)(2) because CHS did not receive

17   reasonably equivalent value and was either insolvent or rendered insolvent

18   or had incurred debts beyond its ability to pay; and (3) voidability of the

19   Transfers under CCC § 3439.05 as CHS did not receive reasonably

20   equivalent value and was either insolvent or rendered insolvent as a result of

21   the Transfers.  For purposes of this Motion, the Receiver will focus on the

22   first claim for actual fraudulent transfer and, if the Motion is granted, the

23   Receiver will request that the remaining claims be dismissed so that all

24   claims are resolved.

25          When the transferor was engaged in a Ponzi scheme, then actual

26   intent under California Uniform Fraudulent Transfer Act ("CUFTA") section

27   3439.04(a)(1) is conclusively presumed.  "[T]he mere existence of a Ponzi

28   scheme is sufficient to establish actual intent" to defraud.  *In re AFI Holding*,

SMILEY WANG-EKVALL, LLP

3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

525 F.3d 700, 704 (9th Cir. 2008) (internal quotation marks omitted); *In re Agric. Research & Tech. Group*, 916 F.2d 528, 535 (9th Cir. 1990) ("*Agritech*"); *see also In re Slatkin*,525 F.3d at 814-15.

In California, a transfer that is made with the actual intent to hinder, delay, or defraud creditors is voidable.  *See* CCC § 3439.04(a)(1).  A transfer is not voidable under this section against a person who took in good faith and for a reasonably equivalent value.  *See* CCC § 3439.08(a). Recovery of a transfer may be obtained from either the initial transferee or the immediate or mediate transferee of the first transferee.  *See* CCC § 3439.08(b)(2).

As set forth in the Receiver's declaration submitted in support of this Application and as the Receiver has testified in connection with status reports and various motions in connection with the receivership, CHS, CHS Asset Management, iCare, Whitney, Parrish and Ha Nguyen were operating a Ponzi scheme.  They raised at least $33.4 million from approximately 500 investors, returning approximately $6.1 million to other investors and leaving $27.3 million in net investments held by investors.  The only source of funds into the accounts was from investors.  Accordingly, new investors' money was the source of the $6.1 million in payments to other investors.  The money not recovered by the Receiver was dissipated.

In addition, on March 18, 2020, Whitney entered into a plea agreement with the United States Attorney's Office through which he admitted to engaging in a scheme to defraud investors through CHS and related entities, to obtain money or property through false promises or statements, and acting with the intent to defraud.  In that plea agreement, Whitney admitted that he was, in fact, guilty of two counts including mail fraud, in violation of Title 18, United States Code, Section 1341, and filing false tax returns for the years 2017 and 2018, in violation of Title 26, United States Code,

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1  Section 7206(1).  A copy of the plea agreement is attached as Exhibit "6" to

2  the Declaration of Robert Mosier ("Mosier Decl.").

3      Furthermore, although the payments provide for "Services" provided

4  by Defendant to CHS, given that the Receivership Defendants were

5  operating an investment fraud with no legitimate business in violation of

6  securities laws, there would appear to be no legitimate services that were

7  provided so that no reasonably equivalent value was received for the

8  Transfers.

9      Given the totality of the circumstances, the Receiver believes that the

10  Court has adequate evidence that CHS made the Transfers with the actual

11  intention to defraud.  Accordingly, the Receiver requests that the Court find

12  that the Transfers, which total $60,000.00, were made to or for the benefit of

13  the Defendant by CHS with the actual intent to hinder, delay, or defraud its

14  creditors such that the Transfers to the Defendant are voidable transfers.

15  The Receiver is therefore entitled to a judgment against the Defendant in the

16  amount of $60,000.00.

17      **C.    Prejudgment and Post-Judgment Interest**

18      The Plaintiff is also entitled to pre-judgment interest at the rate of

19  seven percent (7%) a year, as calculated from the date of each respective

20  Transfer to Defendant.  See Cal. Civ. Code Ann. § 3287(West 2012) (The

21  general rule is set forth in § 3287(a) as follows:  "Every person who is

22  entitled to recover damages certain, or capable of being made certain by

23  calculation, and the right  to recover which is vested in him upon a particular

24  day, is entitled also to recover interest thereon from that day.").  Where

25  interest is awarded on tort and other non-contractual claims, the rate is 7%

26  per annum.  See California Constitution, Article 15, section 1; *Children's*

27  *Hospital and Medical Center v. Bonta*, 97 Cal. App. 4th740, 775 (2002);

28  *Continental Airlines, Inc. v. McDonnell Douglas Corp.*, 2116 Cal.App.3d 388,

434 (1989) (setting 7% as the correct prejudgment interest rate in a case for fraud and breach of contract because "there is no relevant legislative act specifying a rate of prejudgment interest for a fraud claim").

Finally, the Plaintiff should be awarded post-judgment interest, compounded annually, from the date of judgment until paid.  See 28 U.S.C. § 1961 ("Interest shall be allowed on any money judgment in a civil case recovered in a district court.  Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment.").  The weekly average 1-year constant maturity Treasury yield for the calendar week ending on November 16, 2022 was 4.62%.  The applicable post-judgment rate will depend, however, upon the actual date on which the Court renders its judgment.

## IV.    CONCLUSION

Based on the foregoing, the Receiver requests that the Court enter a default judgment:

(1)    Against the Defendant on the first cause of action, in favor of Plaintiff for (a) $60,000.00; (b) pre-judgment interest at the rate of seven percent (7%) per year, as calculated from the date of each respective Transfer to Defendant; and (c) post-judgment interest, compounded annually, from the date of judgment until paid;

/ / /

/ / /

/ / /

/ / /

/ / /

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1       (2)    Dismissing the second and third claims for relief without

2  prejudice; and

3       (3)    Granting such other and further relief as the Court may deem

4  just and appropriate.

5  DATED: January 4, 2023         SMILEY WANG-EKVALL, LLP

By:      */s/ Sharon Oh-Kubisch*

SHARON OH-KUBISCH
Attorneys for Robert P. Mosier,
Receiver

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

# DECLARATION OF SHARON OH-KUBISCH

I, Sharon Oh-Kubisch, declare as follows:

1.      I am Of Counsel with Smiley Wang-Ekvall, LLP, attorneys of record for Robert P. Mosier, the receiver (the "Receiver") for The Church for the Healthy Self aka CHS Trust ("CHS"), iCare Financial Solution, Inc., CHS Asset Management, Inc., and the assets of Kent R.E. Whitney, David Lee Parrish, and Ngoc Ha T. Nguyen and the plaintiff in this action.  I am licensed to practice before this Court and the courts of the State of California.  I know each of the following facts to be true of my own personal knowledge, except as otherwise stated and, if called as a witness, I could and would competently testify with respect thereto.  I make this declaration in support of the Receiver's motion for entry of default judgment ("Motion") against the defendant, Matthew Alan Shelton (the "Defendant").  Unless otherwise defined in this declaration, all terms defined in the Motion are incorporated herein by this reference.

2.      In March 2019, the SEC commenced a civil enforcement action against CHS, CHS Asset Management, Inc., Kent R.E. Whitney, and David Parrish.  The Court appointed the Receiver over all four of the defendants.  It later added iCare Financial Solution, Inc., and Ngoc Ha T. Nguyen as receivership defendants.

3.      Based on documents and analyses received by the Securities Exchange Commission and documents obtained by our office on behalf of the Receiver, we discovered various transfers made for the benefit of the Defendant through the use of a checking account held in the name of CHS at Prestige Community Credit Union.  The bank statement for July 2018 indicates that CHS made a payment of $10,000.00 for the Defendant's benefit by wire transfer.  A true and correct copy of the July 2018 bank statement is attached hereto as Exhibit "1".  The amount of Transfers from

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000  •  Fax 714 445-1002

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1  the Receivership Entities to or for the benefit of Defendant amount to a sum

2  of not less than $60,000.00 and without the Defendant providing reasonably

3  equivalent value to CHS in exchange for the Transfers.

4        4.      Pursuant to a subpoena served on Prestige Community Credit

5  Union, checks and bank statements were obtained for the various checking

6  accounts held in the name of CHS and/or its related entities.  The remaining

7  $50,000.00 of the Transfers were made by five checks drawn on CHS's

8  bank account for the Defendant's benefit which consisted of the following:

9  (1) a check in the amount of $10,000.00 that cleared CHS's bank account on

10  September 12, 2018; (2) a check in the amount of $10,000.00 that cleared

11  CHS's bank account on October 10, 2018; (3) a check in the amount of

12  $10,000.00 that cleared CHS's bank account on December 19, 2018; (4) a

13  check in the amount of $10,000.00 that cleared CHS's bank account on

14  January 3, 2019; and (5) a check in the amount of $10,000.00 that cleared

15  CHS's bank account on February 12, 2019.  True and correct copies of the

16  checks are attached hereto as Exhibit "2".

17        5.      Prior to filing the complaint, the Receiver sent a demand letter to

18  Defendant which includes all the payments received by or for the benefit of

19  Defendant from CHS which total at least $60,000.00.  A true and correct

20  copy of my demand letter (without exhibits) to Defendant is attached hereto

21  as Exhibit "3."

22        6.      No response was ever received by Defendant.  As such, the

23  Receiver was left with no other choice but to file a complaint.  A true and

24  correct copy of the complaint (the "Complaint") (without exhibits) is attached

25  hereto as Exhibit "4" to the Oh-Kubisch Decl.  The Complaint includes

26  claims for avoidance and recovery of the Transfers as fraudulent transfers

27  pursuant to California Civil Code ("CCC") Sections 3439.04(a)(1),

28  3439.04(a)(2), and 3439.05.

7.    On September 27, 2022, the Receiver served the complaint via publication.  Service was deemed complete on October 21, 2022, giving Defendant until November 10, 2022, to respond to the Complaint.  On November 17, 2022, upon the request of the Receiver, the Clerk of the Court entered the Defendant's default in this action.  A true and correct copy of the default is attached hereto as Exhibit "5."

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 4th day of January, 2023, at Costa Mesa, California.

*/s/ Sharon Oh-Kubisch*
SHARON OH-KUBISCH

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

EXHIBIT "1"



**P.O. Box 802631  ▪  Dallas, Texas 75380**
**972-715-4444  ▪  800-423-3229  ▪  prestigecu.org**

## July 2018

**Reporting Activity 07/01 - 07/31**    Page 1 of 12
**Member Number:**                                    95803

THE CHURCH FOR THE HEALTHY SELF
3131 MCKINNEY AVE STE 600
DALLAS TX 75204 - 2456

### Managing Your Accounts

| | | |
|---|---|---|
| | **Phone** | (972) 715-4444 |
| | **Toll-Free** | 1-800-423-3229 |
| | **Online** | www.prestigecu.org |
| | **Mailing** | PO Box 802631 Dallas, TX 75380 |

### Summary of My Accounts

| Account Type | Number | Balance |
|---|---|---|
| Cash Management Savings | 1 | $2,794.11 |
| Primary Business | 950 | $527,133.43 |

### Joint Owners

RICHARD EARL KING II

MAXINE N IRGANG

KELLY FLOREK

### Special Information

Tell A Friend! Refer someone to us to open a Rewards or Payback Checking Account and you can get up to $100 each. Even better, if your friend gets a loan with us, you can each get another $100. Visit prestigecu.org/new-accounts/#friend for referral form & details or ask any Prestige employee.

### Cash Management Savings 1

#### Account Summary

| Date | Description | | Description | |
|---|---|---|---|---|
| 07-01-2018 | Balance last statement | $2,793.52 | | |
| | Total debits this period | $0.00 | Dividends YTD: | $2.96 |
| | Total credits this period | $0.59 | Dividends Withheld YTD: | $0.00 |
| 07-31-2018 | Closing Balance | $2,794.11 | | |

#### Account Activity

| Date | Description | Debits | Credits | Balance |
|---|---|---|---|---|
| **07-01-2018** | **Starting Balance** | | | **$2,793.52** |
| 07-31-2018 | Deposit Dividend Annual Percentage Yield 0.25% Annual Percentage Yield Earned 0.25% (07/01/2018 - 07/31/2018) | | $0.59 | $2,794.11 |
| **07-31-2018** | **Ending Balance** | | | **$2,794.11** |

### Primary Business 950

#### Account Summary

| Date | Description | | Description | |
|---|---|---|---|---|
| 07-01-2018 | Balance last statement | $360,295.56 | | |
| | Total debits this period | $1,578,070.22 | Dividends YTD: | $0.00 |
| | Total credits this period | $1,744,908.09 | Dividends Withheld YTD: | $0.00 |
| 07-31-2018 | Closing Balance | $527,133.43 | | |

EXHIBIT "1"



### July 2018

**Reporting Activity 07/01 - 07/31**    Page 2 of 12

**Member Number:**    95803

## Primary Business 950

### Account Activity

| Date | Description | Debits | Credits | Balance |
|------|-------------|--------|---------|---------|
| **07-01-2018** | **Starting Balance** | | | **$360,295.56** |
| 07-02-2018 | Purchase POS 70729592 CNAC JOLIET JOLIET IL 07/01 REF# 29592 Card# ****3012 | $194.62 | | $360,100.94 |
| 07-02-2018 | Transfer To ******2829 800 | $300.00 | | $359,800.94 |
| 07-02-2018 | Deposit: CREDIT UNION OF SOUTHERN 11390 STANFORD AVE GARDEN GROVE CA | | $181,268.00 | $541,068.94 |
| 07-02-2018 | Stop Added 180376 To 180376 | | $0.00 | $541,068.94 |
| 07-02-2018 | Withdrawal Stop Draft Fee | $33.00 | | $541,035.94 |
| 07-02-2018 | Stop Added 180382 To 180382 | | $0.00 | $541,035.94 |
| 07-02-2018 | Withdrawal Stop Draft Fee | $33.00 | | $541,002.94 |
| 07-02-2018 | Withdrawal ACH Kent Whitney Acorns Investing-Transfer ZXN2R5 (S) | $16.80 | | $540,986.14 |
| 07-02-2018 | Withdrawal ACH KENT WHITNEY BARCLAYCARD US-CREDITCARD *****7999 (S) | $500.00 | | $540,486.14 |
| 07-02-2018 | Withdrawal ACH KENT WHITNEY PAYPAL-INST XFER UBER (S) | $39.70 | | $540,446.44 |
| 07-02-2018 | Withdrawal ACH KENT WHITNEY PAYPAL-INST XFER GRUBHUBFOOD (S) | $134.84 | | $540,311.60 |
| 07-02-2018 | Withdrawal ACH Kent Whitney Subscription-Acorns N5KWP5 (S) | $2.00 | | $540,309.60 |
| 07-02-2018 | Withdrawal ACH Church For The Healthy Villas Fashion I-WEB PMTS ZG9SF4 (R) | $5,400.00 | | $534,909.60 |
| 07-02-2018 | Withdrawal ACH KathleenDomagalski WOOD-26120OP-WEB PMTS WZ2953 (S) | $1,903.49 | | $533,006.11 |
| 07-02-2018 | Withdrawal Check #180388 | $500.00 | | $532,506.11 |
| 07-02-2018 | Withdrawal Check #180389 | $500.00 | | $532,006.11 |
| 07-02-2018 | Withdrawal Check #180390 | $500.00 | | $531,506.11 |
| 07-02-2018 | Withdrawal Check #180378 | $2,375.00 | | $529,131.11 |
| 07-02-2018 | Withdrawal Check #180261 | $3,400.00 | | $525,731.11 |
| 07-02-2018 | Withdrawal Check #180379 | $14,975.61 | | $510,755.50 |
| 07-03-2018 | Purchase POS 78896045 MERIDIAN BUSINESS CMERIDIAN BUSINES 214-800-2300 TX 07/02 REF# 96045 Card# ****3012 | $84.14 | | $510,671.36 |
| 07-03-2018 | Deposit: CREDIT UNION OF SOUTHERN 1000 AVOCADO AVE NEWPORT BEACH CA | | $10,000.00 | $520,671.36 |
| 07-03-2018 | Deposit: CREDIT UNION OF SOUTHERN 11390 STANFORD AVE GARDEN GROVE CA | | $70,301.39 | $590,972.75 |
| 07-03-2018 | Deposit Refund Stop Pay Fees Duplicate | | $66.00 | $591,038.75 |
| 07-03-2018 | Withdrawal ACH Kent Whitney Acorns Investing-Transfer K0NJR5 (S) | $28.98 | | $591,009.77 |
| 07-03-2018 | Withdrawal ACH AUTHNET GATEWAY-BILLING *****7752 | $25.00 | | $590,984.77 |
| 07-03-2018 | Withdrawal ACH Salinas, Danny CA590 - Avalon H-WEB PMTS 31R3M9 (S) | $1,951.31 | | $589,033.46 |
| 07-03-2018 | Withdrawal ACH CAPITAL ONE-MOBILE PMT ***********2000 | $1,252.19 | | $587,781.27 |
| 07-03-2018 | Withdrawal ACH KENT R WHITNEY JR MERRICK BANK COR-MOBILE PAY **********6205 | $4.00 | | $587,777.27 |
| 07-03-2018 | Withdrawal ACH KENT WHITNEY PAYPAL-INST XFER UBER (S) | $78.21 | | $587,699.06 |
| 07-03-2018 | Withdrawal ACH KENT WHITNEY PAYPAL-INST XFER UBER (S) | $10.00 | | $587,689.06 |
| 07-03-2018 | Withdrawal ACH KENT WHITNEY PAYPAL-INST XFER UBER (S) | $50.54 | | $587,638.52 |
| 07-03-2018 | Withdrawal Check #180368 | $120.00 | | $587,518.52 |
| 07-03-2018 | Withdrawal Check #180395 | $1,000.00 | | $586,518.52 |
| 07-03-2018 | Withdrawal Check #180406 | $1,000.00 | | $585,518.52 |
| 07-03-2018 | Withdrawal Check #180409 | $2,000.00 | | $583,518.52 |
| 07-03-2018 | Withdrawal Check #180404 | $2,500.00 | | $581,018.52 |
| 07-03-2018 | Withdrawal Check #14045 | $5,000.00 | | $576,018.52 |
| 07-05-2018 | Transfer To ******2829 800 | $300.00 | | $575,718.52 |

EXHIBIT "1"



| | **July 2018** |
|---|---|
| | **Reporting Activity 07/01 - 07/31**  Page 3 of 12 |
| | **Member Number:**  95803 |

## Primary Business 950

### Account Activity *continued*

| Date | Description | Debits | Credits | Balance |
|------|-------------|--------|---------|---------|
| 07-05-2018 | Withdrawal wire out acct 95803 DANNY SALINAS | $60,000.00 | | $515,718.52 |
| 07-05-2018 | Withdrawal wire out acct 95803 DANNY SALINAS | $18.00 | | $515,700.52 |
| 07-05-2018 | Withdrawal ACH Kent Whitney Acorns Investing-Transfer HM90S5 (S) | $5.00 | | $515,695.52 |
| 07-05-2018 | Withdrawal ACH Kent Whitney Acorns Investing-Transfer 9HDNS5 (S) | $16.56 | | $515,678.96 |
| 07-05-2018 | Withdrawal ACH KENT WHITNEY PAYPAL-INST XFER DAVIDLEEPAR (S) | $964.60 | | $514,714.36 |
| 07-05-2018 | Withdrawal ACH KENT WHITNEY PAYPAL-INST XFER UBER (S) | $5.00 | | $514,709.36 |
| 07-05-2018 | Withdrawal ACH KENT WHITNEY PAYPAL-INST XFER UBER (S) | $11.19 | | $514,698.17 |
| 07-05-2018 | Withdrawal ACH KENT WHITNEY PAYPAL-INST XFER UBER (S) | $15.14 | | $514,683.03 |
| 07-05-2018 | Withdrawal ACH KENT WHITNEY PAYPAL-INST XFER UBER (S) | $29.89 | | $514,653.14 |
| 07-05-2018 | Withdrawal Check #180397 | $200.00 | | $514,453.14 |
| 07-05-2018 | Withdrawal Check #180410 | $500.00 | | $513,953.14 |
| 07-05-2018 | Withdrawal Check #180411 | $500.00 | | $513,453.14 |
| 07-05-2018 | Withdrawal Check #180396 | $1,000.00 | | $512,453.14 |
| 07-05-2018 | Withdrawal Check #180403 | $1,500.00 | | $510,953.14 |
| 07-05-2018 | Withdrawal Check #180407 | $2,500.00 | | $508,453.14 |
| 07-05-2018 | Withdrawal Check #180413 | $3,000.00 | | $505,453.14 |
| 07-05-2018 | Withdrawal Check #180264 | $3,400.00 | | $502,053.14 |
| 07-06-2018 | Deposit: CREDIT UNION OF SOUTHERN 1000 AVOCADO AVE NEWPORT BEACH CA | | $7,000.00 | $509,053.14 |
| 07-06-2018 | Withdrawal ACH Kent Whitney Acorns Investing-Transfer JVRSS5 (S) | $29.04 | | $509,024.10 |
| 07-06-2018 | Withdrawal ACH WHITNEY,KENT AMERICANEXPRESS-TRANSFER ***********2177 | $2,000.00 | | $507,024.10 |
| 07-06-2018 | Withdrawal ACH Lena Le AMEX EPAYMENT-ACH PMT M6782 (S) | $266.47 | | $506,757.63 |
| 07-06-2018 | Withdrawal ACH Lena Le AMEX EPAYMENT-ACH PMT W4002 (S) | $11,411.90 | | $495,345.73 |
| 07-06-2018 | Withdrawal ACH Lena Le AMEX EPAYMENT-ACH PMT M3064 (S) | $34,701.74 | | $460,643.99 |
| 07-06-2018 | Withdrawal ACH CAPITAL ONE-ONLINE PMT ***********8514 | $2,550.08 | | $458,093.91 |
| 07-06-2018 | Withdrawal ACH KENT WHITNEY Credit One Bank-Payment *********3758 | $816.44 | | $457,277.47 |
| 07-06-2018 | Withdrawal ACH KENT WHITNEY PAYPAL-INST XFER ITUNESAPPST (S) | $6.35 | | $457,271.12 |
| 07-06-2018 | Withdrawal ACH KENT WHITNEY PAYPAL-INST XFER UBER (S) | $28.31 | | $457,242.81 |
| 07-06-2018 | Withdrawal ACH KENT WHITNEY PAYPAL-INST XFER UBER (S) | $10.00 | | $457,232.81 |
| 07-06-2018 | Withdrawal ACH KENT WHITNEY PAYPAL-INST XFER UBER (S) | $10.00 | | $457,222.81 |
| 07-06-2018 | Withdrawal ACH KENT WHITNEY PAYPAL-INST XFER UBER (S) | $29.76 | | $457,193.05 |
| 07-06-2018 | Withdrawal ACH KENT WHITNEY PAYPAL-INST XFER UBER (S) | $35.37 | | $457,157.68 |
| 07-06-2018 | Withdrawal ACH KENT WHITNEY PAYPAL-INST XFER UBER (S) | $8.00 | | $457,149.68 |
| 07-06-2018 | Withdrawal Check #180412 | $500.00 | | $456,649.68 |
| 07-06-2018 | Withdrawal Check #180418 | $1,000.00 | | $455,649.68 |
| 07-06-2018 | Withdrawal Check #180414 | $5,000.00 | | $450,649.68 |
| 07-06-2018 | Withdrawal Check #180416 | $5,000.00 | | $445,649.68 |
| 07-06-2018 | Withdrawal Check #17223 | $10,000.00 | | $435,649.68 |
| 07-06-2018 | Withdrawal Check #180381 | $23,401.67 | | $412,248.01 |
| 07-06-2018 | Withdrawal Check #180415 | $25,000.00 | | $387,248.01 |
| 07-06-2018 | Deposit: The Golden 1 CU 185 PARK AVENUE, SUITE SAN JOSE CA | | $74,897.61 | $462,145.62 |
| 07-06-2018 | Withdrawal CARD UBZQ01 9460 WILSHIRE BLVDUNION BANK BEVERLY HILLS CA 07/06 REF# 7183 Card# ****3012 | $503.00 | | $461,642.62 |
| 07-06-2018 | Withdrawal Real-Time - Share WD/Inq Fee CARD UBZQ01 9460 WILSHIRE BLVDUNION BANK BEVERLY HILLS CA 07/06 REF# 7183 Card# ****3012 | $1.00 | | $461,641.62 |

EXHIBIT "1"



## July 2018

**Reporting Activity 07/01 - 07/31**  Page 4 of 12
**Member Number:**  95803

## Primary Business 950

### Account Activity *continued*

| Date | Description | Debits | Credits | Balance |
|------|-------------|--------|---------|---------|
| 07-09-2018 | Withdrawal: CREDIT UNION OF SOUTHERN 1000 AVOCADO AVE NEWPORT BEACH CA | $300.00 | | $461,341.62 |
| 07-09-2018 | Withdrawal: CREDIT UNION OF SOUTHERN 11390 STANFORD AVE GARDEN GROVE CA | $305.00 | | $461,036.62 |
| 07-09-2018 | Withdrawal ACH Lena Le AMEX EPAYMENT-ACH PMT M6486 (S) | $12,947.27 | | $448,089.35 |
| 07-09-2018 | Withdrawal ACH NHA THAI CITI CARD ONLINE-PAYMENT ***********4061 | $4,388.94 | | $443,700.41 |
| 07-09-2018 | Withdrawal ACH COMCAST 8155100-513855167 *****6130 | $126.65 | | $443,573.76 |
| 07-09-2018 | Withdrawal ACH MAXINE IRGANG GEICO-GEICO PYMT UA93D0WTBU3OEIE | $200.00 | | $443,373.76 |
| 07-09-2018 | Withdrawal ACH MaxineIrgang GOLUBCO-338BOAOP-WEB PMTS 9BT173 (S) | $1,725.00 | | $441,648.76 |
| 07-09-2018 | Withdrawal ACH KENT WHITNEY PAYPAL-INST XFER UBER (S) | $5.00 | | $441,643.76 |
| 07-09-2018 | Withdrawal ACH KENT WHITNEY PAYPAL-INST XFER UBER (S) | $46.77 | | $441,596.99 |
| 07-09-2018 | Withdrawal ACH KENT WHITNEY PAYPAL-INST XFER UBER (S) | $3.00 | | $441,593.99 |
| 07-09-2018 | Withdrawal ACH KENT WHITNEY PAYPAL-INST XFER UBER (S) | $10.73 | | $441,583.26 |
| 07-09-2018 | Withdrawal ACH KENT WHITNEY PAYPAL-INST XFER UBER (S) | $71.59 | | $441,511.67 |
| 07-09-2018 | Withdrawal ACH KENT WHITNEY PAYPAL-INST XFER UBER (S) | $1.00 | | $441,510.67 |
| 07-09-2018 | Withdrawal ACH KENT WHITNEY PAYPAL-INST XFER UBER (S) | $28.39 | | $441,482.28 |
| 07-09-2018 | Withdrawal ACH KENT WHITNEY PAYPAL-INST XFER UBER (S) | $29.09 | | $441,453.19 |
| 07-09-2018 | Withdrawal ACH KENT WHITNEY PAYPAL-INST XFER UBER (S) | $29.92 | | $441,423.27 |
| 07-09-2018 | Withdrawal ACH KENT WHITNEY PAYPAL-INST XFER UBER (S) | $5.00 | | $441,418.27 |
| 07-09-2018 | Withdrawal ACH KENT WHITNEY PAYPAL-INST XFER UBER (S) | $193.97 | | $441,224.30 |
| 07-09-2018 | Withdrawal ACH KENT WHITNEY PAYPAL-INST XFER UNIVERSALST (S) | $1,095.00 | | $440,129.30 |
| 07-09-2018 | Stop Added 180427 To 180427 | | $0.00 | $440,129.30 |
| 07-09-2018 | Withdrawal Stop Draft Fee | $33.00 | | $440,096.30 |
| 07-09-2018 | Withdrawal Check #180400 | $257.40 | | $439,838.90 |
| 07-09-2018 | Withdrawal Check #180401 | $283.31 | | $439,555.59 |
| 07-09-2018 | Withdrawal Check #180456 | $330.00 | | $439,225.59 |
| 07-09-2018 | Withdrawal Check #180419 | $597.97 | | $438,627.62 |
| 07-09-2018 | Withdrawal Check #180421 | $694.00 | | $437,933.62 |
| 07-09-2018 | Withdrawal Check #180398 | $955.72 | | $436,977.90 |
| 07-09-2018 | Withdrawal Check #180424 | $1,500.00 | | $435,477.90 |
| 07-09-2018 | Withdrawal Check #180440 | $1,600.00 | | $433,877.90 |
| 07-09-2018 | Withdrawal Check #180425 | $1,655.00 | | $432,222.90 |
| 07-09-2018 | Withdrawal Check #180365 | $2,000.00 | | $430,222.90 |
| 07-09-2018 | Withdrawal Check #180439 | $2,000.00 | | $428,222.90 |
| 07-09-2018 | Withdrawal Check #180268 | $2,200.00 | | $426,022.90 |
| 07-09-2018 | Withdrawal Check #180426 | $2,249.30 | | $423,773.60 |
| 07-09-2018 | Withdrawal Check #180392 | $2,726.71 | | $421,046.89 |
| 07-09-2018 | Withdrawal Check #180450 | $3,000.00 | | $418,046.89 |
| 07-09-2018 | Withdrawal Check #180422 | $3,347.94 | | $414,698.95 |
| 07-09-2018 | Withdrawal Check #180428 | $3,794.69 | | $410,904.26 |
| 07-09-2018 | Withdrawal Check #180417 | $4,500.12 | | $406,404.14 |
| 07-09-2018 | Withdrawal Check #180393 | $5,300.00 | | $401,104.14 |
| 07-09-2018 | Withdrawal Check #180420 | $5,439.92 | | $395,664.22 |
| 07-09-2018 | Withdrawal Check #180448 | $15,000.00 | | $380,664.22 |
| 07-09-2018 | Withdrawal Check #180454 | $70,000.00 | | $310,664.22 |
| 07-10-2018 | Withdrawal ACH Kent Whitney Acorns Investing-Transfer K543V5 (S) | $29.94 | | $310,634.28 |

EXHIBIT "1"



### July 2018

**Reporting Activity 07/01 - 07/31**   Page 5 of 12

**Member Number:**   95803

## Primary Business 950

### Account Activity *continued*

| Date | Description | Debits | Credits | Balance |
|------|-------------|--------|---------|---------|
| 07-10-2018 | Withdrawal ACH KENT WHITNEY PAYPAL-INST XFER UBER (S) | $5.00 | | $310,629.28 |
| 07-10-2018 | Withdrawal ACH KENT WHITNEY PAYPAL-INST XFER UBER (S) | $36.99 | | $310,592.29 |
| 07-10-2018 | Withdrawal ACH KENT WHITNEY PAYPAL-INST XFER WALMART COM (S) | $389.36 | | $310,202.93 |
| 07-10-2018 | Withdrawal ACH KENT WHITNEY PAYPAL-INST XFER UBER (S) | $20.59 | | $310,182.34 |
| 07-10-2018 | Deposit: The Golden 1 CU 185 PARK AVENUE, SUITE SAN JOSE CA | | $375,000.00 | $685,182.34 |
| 07-10-2018 | Withdrawal Check #180431 | $3,310.00 | | $681,872.34 |
| 07-10-2018 | Withdrawal Check #180391 | $5,808.10 | | $676,064.24 |
| 07-10-2018 | Withdrawal Check #17250 | $7,300.00 | | $668,764.24 |
| 07-10-2018 | Withdrawal Check #180394 | $9,065.00 | | $659,699.24 |
| 07-10-2018 | Withdrawal Check #180457 | $10,000.00 | | $649,699.24 |
| 07-10-2018 | Withdrawal Check #180449 | $10,792.64 | | $638,906.60 |
| 07-11-2018 | Deposit ACH STRIPE-TRANSFER | | $50.04 | $638,956.64 |
| 07-11-2018 | Withdrawal ACH Kent Whitney Acorns Investing-Transfer J5DCV5 (S) | $5.00 | | $638,951.64 |
| 07-11-2018 | Withdrawal ACH Kent Whitney Acorns Investing-Transfer 3Z2NV5 (S) | $9.78 | | $638,941.86 |
| 07-11-2018 | Withdrawal ACH KENT WHITNEY PAYPAL-INST XFER UBER (S) | $10.00 | | $638,931.86 |
| 07-11-2018 | Withdrawal ACH KENT WHITNEY PAYPAL-INST XFER UBER (S) | $25.09 | | $638,906.77 |
| 07-11-2018 | Withdrawal ACH KENT WHITNEY PAYPAL-INST XFER ITUNESAPPST (S) | $6.35 | | $638,900.42 |
| 07-11-2018 | Withdrawal ACH KENT WHITNEY PAYPAL-INST XFER PRICELINE (S) | $108.97 | | $638,791.45 |
| 07-11-2018 | Withdrawal ACH KENT WHITNEY PAYPAL-INST XFER HAKKARIAZAD (S) | $2,000.00 | | $636,791.45 |
| 07-11-2018 | Withdrawal ACH KENT WHITNEY PAYPAL-INST XFER WALMART COM (S) | $981.22 | | $635,810.23 |
| 07-11-2018 | Withdrawal CARD P361480 30801 S PACIFIC COAMONTAGE RESO-361 LAGUNA BEACH CA 07/11 REF# 6984 Card# ****3012 | $203.50 | | $635,606.73 |
| 07-11-2018 | Withdrawal Check #180402 | $800.00 | | $634,806.73 |
| 07-11-2018 | Withdrawal Check #180437 | $1,655.00 | | $633,151.73 |
| 07-11-2018 | Withdrawal Check #180430 | $3,310.00 | | $629,841.73 |
| 07-11-2018 | Withdrawal Check #180434 | $3,310.00 | | $626,531.73 |
| 07-11-2018 | Withdrawal Check #180445 | $3,310.00 | | $623,221.73 |
| 07-12-2018 | Transfer To ******2829 800 | $300.00 | | $622,921.73 |
| 07-12-2018 | Deposit: CREDIT UNION OF SOUTHERN 1000 AVOCADO AVE NEWPORT BEACH CA | | $409,000.00 | $1,031,921.73 |
| 07-12-2018 | Withdrawal ACH KENT WHITNEY PAYPAL-INST XFER UBER (S) | $5.00 | | $1,031,916.73 |
| 07-12-2018 | Withdrawal ACH KENT WHITNEY PAYPAL-INST XFER UBER (S) | $10.00 | | $1,031,906.73 |
| 07-12-2018 | Withdrawal ACH KENT WHITNEY PAYPAL-INST XFER UBER (S) | $10.00 | | $1,031,896.73 |
| 07-12-2018 | Withdrawal ACH KENT WHITNEY PAYPAL-INST XFER UBER (S) | $15.00 | | $1,031,881.73 |
| 07-12-2018 | Withdrawal ACH KENT WHITNEY PAYPAL-INST XFER UBER (S) | $16.65 | | $1,031,865.08 |
| 07-12-2018 | Withdrawal ACH KENT WHITNEY PAYPAL-INST XFER UBER (S) | $51.05 | | $1,031,814.03 |
| 07-12-2018 | Withdrawal ACH KENT WHITNEY PAYPAL-INST XFER PRICELINE (S) | $678.74 | | $1,031,135.29 |
| 07-12-2018 | Withdrawal ACH KENT WHITNEY PAYPAL-INST XFER UBER (S) | $10.00 | | $1,031,125.29 |
| 07-12-2018 | Withdrawal ACH KENT WHITNEY PAYPAL-INST XFER UBER (S) | $10.00 | | $1,031,115.29 |
| 07-12-2018 | Withdrawal ACH KENT WHITNEY PAYPAL-INST XFER UBER (S) | $24.87 | | $1,031,090.42 |
| 07-12-2018 | Withdrawal ACH KENT WHITNEY PAYPAL-INST XFER WALMART COM (S) | $79.99 | | $1,031,010.43 |
| 07-12-2018 | Withdrawal ACH KENT WHITNEY PAYPAL-INST XFER WALMART COM (S) | $118.97 | | $1,030,891.46 |



## PRESTIGE
COMMUNITY CREDIT UNION

**July 2018**

Reporting Activity 07/01 - 07/31     Page 6 of 12

Member Number:                                       95803

## Primary Business 950

### Account Activity *continued*

| Date | Description | Debits | Credits | Balance |
|------|-------------|--------|---------|---------|
| 07-12-2018 | Withdrawal: CREDIT UNION OF SOUTHERN 1000 AVOCADO AVE NEWPORT BEACH CA | $1,500.00 | | $1,029,391.46 |
| 07-12-2018 | Withdrawal Check #180451 | $1,400.00 | | $1,027,991.46 |
| 07-12-2018 | Withdrawal Check #180441 | $2,096.33 | | $1,025,895.13 |
| 07-12-2018 | Withdrawal Check #180477 | $2,430.39 | | $1,023,464.74 |
| 07-12-2018 | Withdrawal Check #180433 | $3,000.00 | | $1,020,464.74 |
| 07-12-2018 | Withdrawal Check #180475 | $3,000.00 | | $1,017,464.74 |
| 07-12-2018 | Withdrawal Check #180476 | $3,586.49 | | $1,013,878.25 |
| 07-12-2018 | Withdrawal Check #14047 | $100,000.00 | | $913,878.25 |
| 07-13-2018 | Withdrawal ACH KENT WHITNEY PAYPAL-INST XFER ANIVEUXLET (S) | $46.11 | | $913,832.14 |
| 07-13-2018 | Withdrawal ACH KENT WHITNEY PAYPAL-INST XFER VISTAPRINT (S) | $125.48 | | $913,706.66 |
| 07-13-2018 | Withdrawal ACH KENT WHITNEY PAYPAL-INST XFER KMAYZULC (S) | $3,000.00 | | $910,706.66 |
| 07-13-2018 | Withdrawal ACH KENT WHITNEY PAYPAL-INST XFER HUONGPHAM91 (S) | $1,000.00 | | $909,706.66 |
| 07-13-2018 | Withdrawal ACH KENT WHITNEY PAYPAL-INST XFER MLODY342 (S) | $190.00 | | $909,516.66 |
| 07-13-2018 | Withdrawal ACH KENT WHITNEY WESTERN UNION-CAPTURE **********6434 | $406.00 | | $909,110.66 |
| 07-13-2018 | Withdrawal Check #180284 | $20.00 | | $909,090.66 |
| 07-13-2018 | Withdrawal Check #180483 | $800.00 | | $908,290.66 |
| 07-13-2018 | Withdrawal Check #14046 | $4,000.00 | | $904,290.66 |
| 07-13-2018 | Withdrawal Check #14060 | $16,693.00 | | $887,597.66 |
| 07-15-2018 | Purchase POS 00000000 CRICKET WIRELESS 855-246-2461 FL 07/15 REF# 10595 Card# ****3012 | $94.00 | | $887,503.66 |
| 07-16-2018 | Transfer To *****2829 800 | $300.00 | | $887,203.66 |
| 07-16-2018 | Withdrawal: The Golden 1 CU 185 PARK AVENUE, SUITE SAN JOSE CA | $500.00 | | $886,703.66 |
| 07-16-2018 | Withdrawal: The Golden 1 CU 185 PARK AVENUE, SUITE SAN JOSE CA | $10,005.00 | | $876,698.66 |
| 07-16-2018 | Withdrawal ACH WHITNEY KENT DISCOVER-E-PAYMENT 0102 (S) | $552.51 | | $876,146.15 |
| 07-16-2018 | Withdrawal ACH KENT WHITNEY PAYPAL-INST XFER UBER (S) | $9.96 | | $876,136.19 |
| 07-16-2018 | Withdrawal ACH KENT WHITNEY PAYPAL-INST XFER MICROSOFT (S) | $6.99 | | $876,129.20 |
| 07-16-2018 | Withdrawal ACH KENT WHITNEY PAYPAL-INST XFER UBER (S) | $24.38 | | $876,104.82 |
| 07-16-2018 | Withdrawal ACH KENT WHITNEY PAYPAL-INST XFER UBER (S) | $5.00 | | $876,099.82 |
| 07-16-2018 | Withdrawal ACH KENT WHITNEY PAYPAL-INST XFER UBER (S) | $23.05 | | $876,076.77 |
| 07-16-2018 | Deposit: CREDIT UNION OF SOUTHERN 11390 STANFORD AVE GARDEN GROVE CA | | $40,000.00 | $916,076.77 |
| 07-16-2018 | Withdrawal Check #180488 | $150.00 | | $915,926.77 |
| 07-16-2018 | Withdrawal Check #180470 | $323.27 | | $915,603.50 |
| 07-16-2018 | Withdrawal Check #180447 | $333.32 | | $915,270.18 |
| 07-16-2018 | Withdrawal Check #180485 | $500.00 | | $914,770.18 |
| 07-16-2018 | Withdrawal Check #180490 | $800.00 | | $913,970.18 |
| 07-16-2018 | Withdrawal Check #180473 | $1,000.00 | | $912,970.18 |
| 07-16-2018 | Withdrawal Check #180463 | $1,500.00 | | $911,470.18 |
| 07-16-2018 | Withdrawal Check #180444 | $1,655.00 | | $909,815.18 |
| 07-16-2018 | Withdrawal Check #180458 | $2,000.00 | | $907,815.18 |
| 07-16-2018 | Withdrawal Check #14059 | $4,463.00 | | $903,352.18 |



### July 2018

**Reporting Activity 07/01 - 07/31**   Page 7 of 12

**Member Number:**   95803

## Primary Business 950

### Account Activity *continued*

| Date | Description | Debits | Credits | Balance |
|------|-------------|--------|---------|---------|
| 07-16-2018 | Withdrawal Check #180482 | $4,500.00 | | $898,852.18 |
| 07-16-2018 | Withdrawal Check #180459 | $5,740.00 | | $893,112.18 |
| 07-16-2018 | Withdrawal Check #180442 | $9,181.80 | | $883,930.38 |
| 07-16-2018 | Withdrawal Check #180479 | $26,975.83 | | $856,954.55 |
| 07-17-2018 | Purchase POS 52310775 CNAC JOLIET JOLIET IL 07/16 REF# 10775 Card# ****3012 | $194.62 | | $856,759.93 |
| 07-17-2018 | Deposit: The Golden 1 CU 185 PARK AVENUE, SUITE SAN JOSE CA | | $60,000.00 | $916,759.93 |
| 07-17-2018 | Withdrawal ACH Kent Whitney Acorns Later-Transfer 46T8X5 (S) | $25.00 | | $916,734.93 |
| 07-17-2018 | Withdrawal ACH KENT WHITNEY PAYPAL-INST XFER ITUNESAPPST (S) | $16.99 | | $916,717.94 |
| 07-17-2018 | Withdrawal ACH KENT WHITNEY PAYPAL-INST XFER UBER (S) | $10.00 | | $916,707.94 |
| 07-17-2018 | Withdrawal ACH KENT WHITNEY PAYPAL-INST XFER UBER (S) | $10.00 | | $916,697.94 |
| 07-17-2018 | Withdrawal ACH KENT WHITNEY PAYPAL-INST XFER GREGSANDFER (S) | $26.88 | | $916,671.06 |
| 07-17-2018 | Withdrawal ACH KENT WHITNEY PAYPAL-INST XFER CULBERJ (S) | $285.61 | | $916,385.45 |
| 07-17-2018 | Withdrawal Check #180467 | $390.45 | | $915,995.00 |
| 07-17-2018 | Withdrawal Check #180466 | $461.82 | | $915,533.18 |
| 07-17-2018 | Withdrawal Check #180480 | $500.00 | | $915,033.18 |
| 07-17-2018 | Withdrawal Check #180493 | $500.00 | | $914,533.18 |
| 07-17-2018 | Withdrawal Check #180502 | $1,000.00 | | $913,533.18 |
| 07-17-2018 | Withdrawal Check #180489 | $1,286.84 | | $912,246.34 |
| 07-17-2018 | Withdrawal Check #180486 | $1,500.00 | | $910,746.34 |
| 07-17-2018 | Withdrawal Check #180455 | $1,942.16 | | $908,804.18 |
| 07-17-2018 | Withdrawal Check #180501 | $2,500.00 | | $906,304.18 |
| 07-17-2018 | Withdrawal Check #180461 | $3,000.00 | | $903,304.18 |
| 07-17-2018 | Withdrawal Check #14061 | $4,000.00 | | $899,304.18 |
| 07-17-2018 | Withdrawal Check #14084 | $5,000.00 | | $894,304.18 |
| 07-17-2018 | Withdrawal Check #14085 | $5,000.00 | | $889,304.18 |
| 07-17-2018 | Withdrawal Check #14044 | $5,000.00 | | $884,304.18 |
| 07-17-2018 | Withdrawal Check #180429 | $6,851.00 | | $877,453.18 |
| 07-17-2018 | Withdrawal Check #180471 | $9,000.00 | | $868,453.18 |
| 07-17-2018 | Withdrawal Check #180435 | $12,903.88 | | $855,549.30 |
| 07-17-2018 | Withdrawal Check #180453 | $39,603.51 | | $815,945.79 |
| 07-18-2018 | Deposit ACH STRIPE-TRANSFER | | $200.19 | $816,145.98 |
| 07-18-2018 | Transfer To ******2829 800 | $350.00 | | $815,795.98 |
| 07-18-2018 | Withdrawal Wire Out acct 95803 FOXEAN UNITY SOLUTIONS | $10,000.00 | | $805,795.98 |
| 07-18-2018 | Withdrawal Wire Out acct 95803 FOXEAN UNITY SOLUTIONS | $18.00 | | $805,777.98 |
| 07-18-2018 | Withdrawal ACH Kent Whitney Acorns Investing-Transfer J7MPX5 (S) | $5.06 | | $805,772.92 |
| 07-18-2018 | Withdrawal ACH AMEX EPAYMENT-ACH PMT S4386 | $24,341.17 | | $781,431.75 |
| 07-18-2018 | Withdrawal ACH KENT WHITNEY Credit One Bank-Payment *********3819 | $501.96 | | $780,929.79 |
| 07-18-2018 | Withdrawal ACH KENT WHITNEY Credit One Bank-Payment *********0758 | $501.96 | | $780,427.83 |
| 07-18-2018 | Withdrawal ACH KENT WHITNEY Credit One Bank-Payment *********0788 | $558.37 | | $779,869.46 |
| 07-18-2018 | Withdrawal ACH KENT R WHITNEY JR MERRICK BANK COR-MOBILE PAY ***********0277 | $321.05 | | $779,548.41 |
| 07-18-2018 | Withdrawal ACH Pacific Gas & El-PAYMENT ******6128 | $45.80 | | $779,502.61 |
| 07-18-2018 | Withdrawal ACH KENT WHITNEY PAYPAL-INST XFER GBELLAHAIRE (S) | $3,000.00 | | $776,502.61 |



## July 2018

**Reporting Activity 07/01 - 07/31**  Page 8 of 12

**Member Number:**  95803

## Primary Business 950

### Account Activity *continued*

| Date | Description | Debits | Credits | Balance |
|------|-------------|--------|---------|---------|
| 07-18-2018 | Withdrawal ACH Saks Retail-PHONE PMNT ***********7218 | $1,555.25 | | $774,947.36 |
| 07-18-2018 | Withdrawal Check #180469 | $20.99 | | $774,926.37 |
| 07-18-2018 | Withdrawal Check #180464 | $43.29 | | $774,883.08 |
| 07-18-2018 | Withdrawal Check #180499 | $353.92 | | $774,529.16 |
| 07-18-2018 | Withdrawal Check #14069 | $1,000.00 | | $773,529.16 |
| 07-18-2018 | Withdrawal Check #180503 | $2,500.00 | | $771,029.16 |
| 07-18-2018 | Withdrawal Check #14064 | $5,000.00 | | $766,029.16 |
| 07-18-2018 | Withdrawal Check #180481 | $9,000.00 | | $757,029.16 |
| 07-18-2018 | Withdrawal Check #14071 | $100,000.00 | | $657,029.16 |
| 07-18-2018 | Withdrawal: The Golden 1 CU 185 PARK AVENUE, SUITE SAN JOSE CA | $500.00 | | $656,529.16 |
| 07-19-2018 | Deposit: The Golden 1 CU 185 PARK AVENUE, SUITE SAN JOSE CA | | $140,107.33 | $796,636.49 |
| 07-19-2018 | Withdrawal ACH KENT WHITNEY PAYPAL-INST XFER MRODEBAUGH (S) | $15.00 | | $796,621.49 |
| 07-19-2018 | Withdrawal ACH KENT WHITNEY PAYPAL-INST XFER DELHIMOM3 (S) | $25.69 | | $796,595.80 |
| 07-19-2018 | Withdrawal ACH KENT WHITNEY PAYPAL-INST XFER GILBERTGALV (S) | $37.90 | | $796,557.90 |
| 07-19-2018 | Withdrawal ACH KENT WHITNEY PAYPAL-INST XFER THEGIRLS1 (S) | $39.95 | | $796,517.95 |
| 07-19-2018 | Withdrawal ACH KENT WHITNEY PAYPAL-INST XFER SUITTIEGUY (S) | $64.99 | | $796,452.96 |
| 07-19-2018 | Withdrawal ACH KENT WHITNEY PAYPAL-INST XFER UNIVERSALST (S) | $1,971.00 | | $794,481.96 |
| 07-19-2018 | Withdrawal ACH KENT WHITNEY PAYPAL-INST XFER TRENTASMITH (S) | $41.25 | | $794,440.71 |
| 07-19-2018 | Withdrawal ACH KENT WHITNEY PAYPAL-INST XFER INFO (S) | $1,550.00 | | $792,890.71 |
| 07-19-2018 | Transfer To ******2829 801 | $300.00 | | $792,590.71 |
| 07-19-2018 | Deposit: CREDIT UNION OF SOUTHERN 11390 STANFORD AVE GARDEN GROVE CA | | $138,000.00 | $930,590.71 |
| 07-19-2018 | Withdrawal Check #180472 | $15,000.00 | | $915,590.71 |
| 07-20-2018 | Transfer To ******2829 800 | $300.00 | | $915,290.71 |
| 07-20-2018 | Withdrawal ACH KENT WHITNEY PAYPAL-INST XFER ITUNESAPPST (S) | $6.35 | | $915,284.36 |
| 07-20-2018 | Withdrawal ACH KENT WHITNEY PAYPAL-INST XFER VALUECOLLEG (S) | $11.95 | | $915,272.41 |
| 07-20-2018 | Withdrawal ACH KENT WHITNEY PAYPAL-INST XFER CTLING07 (S) | $14.98 | | $915,257.43 |
| 07-20-2018 | Withdrawal ACH KENT WHITNEY PAYPAL-INST XFER SHESAIDSEW (S) | $19.35 | | $915,238.08 |
| 07-20-2018 | Withdrawal ACH KENT WHITNEY PAYPAL-INST XFER MGLV (S) | $21.00 | | $915,217.08 |
| 07-20-2018 | Withdrawal ACH KENT WHITNEY PAYPAL-INST XFER JOYCEMORISH (S) | $22.99 | | $915,194.09 |
| 07-20-2018 | Withdrawal ACH KENT WHITNEY PAYPAL-INST XFER *****0210WHOLES (S) | $34.19 | | $915,159.90 |
| 07-20-2018 | Withdrawal ACH KENT WHITNEY PAYPAL-INST XFER ETHAND74 (S) | $45.79 | | $915,114.11 |
| 07-20-2018 | Withdrawal ACH KENT WHITNEY PAYPAL-INST XFER MKGREEN05 (S) | $110.10 | | $915,004.01 |
| 07-20-2018 | Withdrawal ACH KENT WHITNEY PAYPAL-INST XFER PRICELINE (S) | $1,585.20 | | $913,418.81 |
| 07-20-2018 | Withdrawal ACH KENT WHITNEY PAYPAL-INST XFER UBER (S) | $5.00 | | $913,413.81 |
| 07-20-2018 | Withdrawal ACH KENT WHITNEY PAYPAL-INST XFER UBER (S) | $87.01 | | $913,326.80 |



**July 2018**

**Reporting Activity 07/01 - 07/31**  Page 9 of 12

Member Number:  95803

## Primary Business 950

### Account Activity *continued*

| Date | Description | Debits | Credits | Balance |
|------|-------------|--------|---------|---------|
| 07-20-2018 | Withdrawal: The Golden 1 CU 185 PARK AVENUE, SUITE SAN JOSE CA | $500.00 | | $912,826.80 |
| 07-20-2018 | Withdrawal Check #14075 | $1,450.00 | | $911,376.80 |
| 07-20-2018 | Withdrawal Check #180474 | $2,000.00 | | $909,376.80 |
| 07-20-2018 | Withdrawal Check #14077 | $4,000.00 | | $905,376.80 |
| 07-20-2018 | Withdrawal Check #14076 | $6,000.00 | | $899,376.80 |
| 07-20-2018 | Withdrawal Check #180478 | $15,000.00 | | $884,376.80 |
| 07-21-2018 | Purchase POS 00000001 NADEX TE13128840100 IL 07/20 REF# 71252 Card# ****3012 | $1,000.00 | | $883,376.80 |
| 07-23-2018 | Withdrawal Wire Out Acct 95803 MATTHEW A SHELTON | $10,000.00 | | $873,376.80 |
| 07-23-2018 | Withdrawal Wire Out Acct 95803 MATTHEW A SHELTON | $18.00 | | $873,358.80 |
| 07-23-2018 | Transfer To ******2829 800 | $300.00 | | $873,058.80 |
| 07-23-2018 | Withdrawal ACH COMCAST 8771300-111947606 *****9994 | $31.42 | | $873,027.38 |
| 07-23-2018 | Withdrawal ACH KENT WHITNEY PAYPAL-INST XFER NETFLIX.COM (S) | $10.99 | | $873,016.39 |
| 07-23-2018 | Withdrawal ACH KENT WHITNEY PAYPAL-INST XFER NETFLIX.COM (S) | $7.99 | | $873,008.40 |
| 07-23-2018 | Withdrawal ACH KENT WHITNEY PAYPAL-INST XFER UBER (S) | $17.40 | | $872,991.00 |
| 07-23-2018 | Withdrawal Check #14090 | $330.00 | | $872,661.00 |
| 07-23-2018 | Withdrawal Check #180487 | $460.73 | | $872,200.27 |
| 07-23-2018 | Withdrawal Check #14089 | $500.00 | | $871,700.27 |
| 07-23-2018 | Withdrawal Check #14079 | $1,140.00 | | $870,560.27 |
| 07-23-2018 | Withdrawal Check #180443 | $1,655.00 | | $868,905.27 |
| 07-23-2018 | Withdrawal Check #180498 | $2,755.10 | | $866,150.17 |
| 07-23-2018 | Withdrawal Check #180465 | $3,310.00 | | $862,840.17 |
| 07-23-2018 | Withdrawal Check #14065 | $4,000.00 | | $858,840.17 |
| 07-23-2018 | Withdrawal Check #180496 | $11,529.11 | | $847,311.06 |
| 07-23-2018 | Withdrawal Check #180494 | $26,409.16 | | $820,901.90 |
| 07-23-2018 | Withdrawal Check #14081 | $50,000.00 | | $770,901.90 |
| 07-23-2018 | Withdrawal Check #180491 | $120,000.00 | | $650,901.90 |
| 07-24-2018 | Withdrawal: CREDIT UNION OF SOUTHERN 1000 AVOCADO AVE NEWPORT BEACH CA | $614.00 | | $650,287.90 |
| 07-24-2018 | Withdrawal: CREDIT UNION OF SOUTHERN 1000 AVOCADO AVE NEWPORT BEACH CA | $2,557.00 | | $647,730.90 |
| 07-24-2018 | Withdrawal: CREDIT UNION OF SOUTHERN 1000 AVOCADO AVE NEWPORT BEACH CA | $828.00 | | $646,902.90 |
| 07-24-2018 | Transfer To ******2829 800 | $574.00 | | $646,328.90 |
| 07-24-2018 | Withdrawal ACH Lena Le AMEX EPAYMENT-ACH PMT W8764 (S) | $49,346.92 | | $596,981.98 |
| 07-24-2018 | Withdrawal ACH KENT WHITNEY PAYPAL-INST XFER MICROSOFT (S) | $6.99 | | $596,974.99 |
| 07-24-2018 | Withdrawal ACH MAXINE IRGANG T-MOBILE-PCS SVC *****5575 (R) | $138.46 | | $596,836.53 |
| 07-24-2018 | Withdrawal Check #14098 | $500.00 | | $596,336.53 |
| 07-24-2018 | Withdrawal Check #180500 | $502.30 | | $595,834.23 |
| 07-24-2018 | Withdrawal Check #14068 | $828.00 | | $595,006.23 |
| 07-24-2018 | Withdrawal Check #14097 | $1,000.00 | | $594,006.23 |
| 07-24-2018 | Withdrawal Check #14070 | $3,000.00 | | $591,006.23 |
| 07-24-2018 | Withdrawal Check #180432 | $3,310.00 | | $587,696.23 |
| 07-24-2018 | Withdrawal Check #14088 | $7,798.43 | | $579,897.80 |
| 07-24-2018 | Withdrawal Check #14042 | $9,500.00 | | $570,397.80 |
| 07-25-2018 | Transfer To ******2829 800 | $300.00 | | $570,097.80 |



**July 2018**

Reporting Activity 07/01 - 07/31   Page 10 of 12

Member Number:                              95803

## Primary Business 950

### Account Activity *continued*

| Date | Description | Debits | Credits | Balance |
|------|-------------|--------|---------|---------|
| 07-25-2018 | Withdrawal ACH Kent Whitney Acorns Investing-Transfer XYJ206 (S) | $5.00 | | $570,092.80 |
| 07-25-2018 | Withdrawal ACH KENT WHITNEY PAYPAL-INST XFER UBER (S) | $10.00 | | $570,082.80 |
| 07-25-2018 | Withdrawal ACH KENT WHITNEY PAYPAL-INST XFER UBER (S) | $10.00 | | $570,072.80 |
| 07-25-2018 | Withdrawal ACH KENT WHITNEY PAYPAL-INST XFER UBER (S) | $20.13 | | $570,052.67 |
| 07-25-2018 | Withdrawal Check #14102 | $1,139.80 | | $568,912.87 |
| 07-25-2018 | Withdrawal Check #14103 | $2,032.88 | | $566,879.99 |
| 07-25-2018 | Withdrawal Check #180495 | $35,143.87 | | $531,736.12 |
| 07-26-2018 | Transfer To ******2829 800 | $300.00 | | $531,436.12 |
| 07-26-2018 | Withdrawal ACH KENT WHITNEY PAYPAL-INST XFER UBER (S) | $47.26 | | $531,388.86 |
| 07-26-2018 | Withdrawal ACH KENT WHITNEY PAYPAL-INST XFER UBER (S) | $10.00 | | $531,378.86 |
| 07-26-2018 | Withdrawal ACH KENT WHITNEY PAYPAL-INST XFER UBER (S) | $53.08 | | $531,325.78 |
| 07-26-2018 | Withdrawal ACH KENT WHITNEY PAYPAL-INST XFER UBER (S) | $10.00 | | $531,315.78 |
| 07-26-2018 | Deposit: CREDIT UNION OF SOUTHERN 11390 STANFORD AVE GARDEN GROVE CA | | $198,490.22 | $729,806.00 |
| 07-26-2018 | Withdrawal Check #14091 | $500.00 | | $729,306.00 |
| 07-26-2018 | Withdrawal Check #14086 | $572.88 | | $728,733.12 |
| 07-26-2018 | Withdrawal Check #14095 | $99,999.00 | | $628,734.12 |
| 07-27-2018 | Withdrawal ACH Kent Whitney Acorns Investing-Transfer 0DP316 (S) | $7.53 | | $628,726.59 |
| 07-27-2018 | Withdrawal ACH DEPT EDUCATION-STUDENT LN 0000 | $165.09 | | $628,561.50 |
| 07-27-2018 | Withdrawal ACH KENT WHITNEY PAYPAL-INST XFER UBER (S) | $10.00 | | $628,551.50 |
| 07-27-2018 | Withdrawal ACH KENT WHITNEY PAYPAL-INST XFER UBER (S) | $20.77 | | $628,530.73 |
| 07-27-2018 | Withdrawal ACH PROG SELECT INS-INS PREM *****0937 CHS | $270.65 | | $628,260.08 |
| 07-27-2018 | Withdrawal Check #14100 | $79.96 | | $628,180.12 |
| 07-27-2018 | Withdrawal Check #181005 | $500.00 | | $627,680.12 |
| 07-27-2018 | Withdrawal Check #14078 | $722.00 | | $626,958.12 |
| 07-27-2018 | Withdrawal Check #14083 | $791.15 | | $626,166.97 |
| 07-27-2018 | Withdrawal Check #181004 | $2,000.00 | | $624,166.97 |
| 07-27-2018 | Withdrawal Check #14104 | $5,622.35 | | $618,544.62 |
| 07-27-2018 | Withdrawal Check #14062 | $7,000.00 | | $611,544.62 |
| 07-28-2018 | Purchase POS 00000001 NADEX TE13128840100 IL 07/27 REF# 50565 Card# ****3012 | $1,000.00 | | $610,544.62 |
| 07-30-2018 | Withdrawal Check #181009 | $2,000.00 | | $608,544.62 |
| 07-30-2018 | Withdrawal ACH Lena Le AMEX EPAYMENT-ACH PMT W1986 (S) | $18,937.62 | | $589,607.00 |
| 07-30-2018 | Withdrawal ACH KENT WHITNEY BARCLAYCARD US-CREDITCARD *****2871 (S) | $1,520.12 | | $588,086.88 |
| 07-30-2018 | Withdrawal ACH KENT WHITNEY BARCLAYCARD US-CREDITCARD *****8157 (S) | $800.00 | | $587,286.88 |
| 07-30-2018 | Withdrawal ACH FPB CR CARD-TELEPHONE COL*****8377 | $30.40 | | $587,256.48 |
| 07-30-2018 | Withdrawal ACH FPB CR CARD-TELEPHONE COL*****8436 | $35.56 | | $587,220.92 |
| 07-30-2018 | Deposit: CREDIT UNION OF SOUTHERN 11390 STANFORD AVE GARDEN GROVE CA | | $1,268.00 | $588,488.92 |
| 07-30-2018 | Withdrawal Check #181017 | $150.00 | | $588,338.92 |
| 07-30-2018 | Withdrawal Check #14092 | $385.00 | | $587,953.92 |
| 07-30-2018 | Withdrawal Check #181000 | $1,288.00 | | $586,665.92 |
| 07-30-2018 | Withdrawal Check #181002 | $2,000.00 | | $584,665.92 |
| 07-30-2018 | Withdrawal Check #180436 | $3,310.00 | | $581,355.92 |
| 07-30-2018 | Withdrawal Check #181003 | $3,500.00 | | $577,855.92 |
| 07-30-2018 | Withdrawal Check #181006 | $5,000.00 | | $572,855.92 |
| 07-30-2018 | Withdrawal Check #14099 | $8,906.78 | | $563,949.14 |
| 07-30-2018 | Withdrawal Check #181016 | $42,149.63 | | $521,799.51 |



**July 2018**

Reporting Activity 07/01 - 07/31     Page 11 of 12

Member Number:                                          95803

## Primary Business 950

### Account Activity *continued*

| Date | Description | Debits | Credits | Balance |
|---|---|---|---|---|
| 07-31-2018 | Deposit: The Golden 1 CU 185 PARK AVENUE, SUITE SAN JOSE CA | | $38,800.00 | $560,599.51 |
| 07-31-2018 | Deposit: The Golden 1 CU 185 PARK AVENUE, SUITE SAN JOSE CA | | $459.31 | $561,058.82 |
| 07-31-2018 | Withdrawal ACH Kent Whitney Acorns Investing-Transfer H1BM16 (S) | $20.94 | | $561,037.88 |
| 07-31-2018 | Withdrawal ACH Lena Le AMEX EPAYMENT-ACH PMT W5462 (S) | $26,787.81 | | $534,250.07 |
| 07-31-2018 | Withdrawal ACH CONT FINANCE-PAY BY PHO **********4060 | $15.22 | | $534,234.85 |
| 07-31-2018 | Withdrawal ACH KENT R WHITNEY JR MERRICK BANK COR-MOBILE PAY **********5895 | $405.07 | | $533,829.78 |
| 07-31-2018 | Withdrawal ACH KENT WHITNEY PAYPAL-INST XFER GBELLAHAIRE (S) | $663.89 | | $533,165.89 |
| 07-31-2018 | Transfer To ******2829 800 | $300.00 | | $532,865.89 |
| 07-31-2018 | Withdrawal Check #181001 | $64.99 | | $532,800.90 |
| 07-31-2018 | Withdrawal Check #14101 | $167.47 | | $532,633.43 |
| 07-31-2018 | Withdrawal Check #181060 | $500.00 | | $532,133.43 |
| 07-31-2018 | Withdrawal Check #181020 | $5,000.00 | | $527,133.43 |
| **07-31-2018** | **Ending Balance** | | | **$527,133.43** |

### Check Recap

| Number | Date | Amount | Number | Date | Amount | Number | Date | Amount |
|---|---|---|---|---|---|---|---|---|
| 14042 | 07/24 | 9,500.00 | 14097 | 07/24 | 1,000.00 | 180401 | 07/09 | 283.31 |
| 14044 | 07/17 | 5,000.00 | 14098 | 07/24 | 500.00 | 180402 | 07/11 | 800.00 |
| 14045 | 07/03 | 5,000.00 | 14099 | 07/30 | 8,906.78 | 180403 | 07/05 | 1,500.00 |
| 14046 | 07/13 | 4,000.00 | 14100 | 07/27 | 79.96 | 180404 | 07/03 | 2,500.00 |
| 14047 | 07/12 | 100,000.00 | 14101 | 07/31 | 167.47 | 180406 | 07/03 | 1,000.00 |
| 14059 | 07/16 | 4,463.00 | 14102 | 07/25 | 1,139.80 | 180407 | 07/05 | 2,500.00 |
| 14060 | 07/13 | 16,693.00 | 14103 | 07/25 | 2,032.88 | 180409 | 07/03 | 2,000.00 |
| 14061 | 07/17 | 4,000.00 | 14104 | 07/27 | 5,622.35 | 180410 | 07/05 | 500.00 |
| 14062 | 07/27 | 7,000.00 | 17223 | 07/06 | 10,000.00 | 180411 | 07/05 | 500.00 |
| 14064 | 07/18 | 5,000.00 | 17250 | 07/10 | 7,300.00 | 180412 | 07/06 | 500.00 |
| 14065 | 07/23 | 4,000.00 | 180261 | 07/02 | 3,400.00 | 180413 | 07/05 | 3,000.00 |
| 14068 | 07/24 | 828.00 | 180264 | 07/05 | 3,400.00 | 180414 | 07/06 | 5,000.00 |
| 14069 | 07/18 | 1,000.00 | 180268 | 07/09 | 2,200.00 | 180415 | 07/06 | 25,000.00 |
| 14070 | 07/24 | 3,000.00 | 180284 | 07/13 | 20.00 | 180416 | 07/06 | 5,000.00 |
| 14071 | 07/18 | 100,000.00 | 180365 | 07/09 | 2,000.00 | 180417 | 07/09 | 4,500.12 |
| 14075 | 07/20 | 1,450.00 | 180368 | 07/03 | 120.00 | 180418 | 07/06 | 1,000.00 |
| 14076 | 07/20 | 6,000.00 | 180378 | 07/02 | 2,375.00 | 180419 | 07/09 | 597.97 |
| 14077 | 07/20 | 4,000.00 | 180379 | 07/02 | 14,975.61 | 180420 | 07/09 | 5,439.92 |
| 14078 | 07/27 | 722.00 | 180381 | 07/06 | 23,401.67 | 180421 | 07/09 | 694.00 |
| 14079 | 07/23 | 1,140.00 | 180388 | 07/02 | 500.00 | 180422 | 07/09 | 3,347.94 |
| 14081 | 07/23 | 50,000.00 | 180389 | 07/02 | 500.00 | 180424 | 07/09 | 1,500.00 |
| 14083 | 07/27 | 791.15 | 180390 | 07/02 | 500.00 | 180425 | 07/09 | 1,655.00 |
| 14084 | 07/17 | 5,000.00 | 180391 | 07/10 | 5,808.10 | 180426 | 07/09 | 2,249.30 |
| 14085 | 07/17 | 5,000.00 | 180392 | 07/09 | 2,726.71 | 180428 | 07/09 | 3,794.69 |
| 14086 | 07/26 | 572.88 | 180393 | 07/09 | 5,300.00 | 180429 | 07/17 | 6,851.00 |
| 14088 | 07/24 | 7,798.43 | 180394 | 07/09 | 9,065.00 | 180430 | 07/11 | 3,310.00 |
| 14089 | 07/23 | 500.00 | 180395 | 07/03 | 1,000.00 | 180431 | 07/10 | 3,310.00 |
| 14090 | 07/23 | 330.00 | 180396 | 07/05 | 1,000.00 | 180432 | 07/24 | 3,310.00 |
| 14091 | 07/26 | 500.00 | 180397 | 07/05 | 200.00 | 180433 | 07/12 | 3,000.00 |
| 14092 | 07/30 | 385.00 | 180398 | 07/09 | 955.72 | 180434 | 07/11 | 3,310.00 |
| 14095 | 07/26 | 99,999.00 | 180400 | 07/09 | 257.40 | 180435 | 07/17 | 12,903.88 |

EXHIBIT "1"



**July 2018**

**Reporting Activity 07/01 - 07/31**   Page 12 of 12

**Member Number:**                                    95803

## Primary Business 950

### Check Recap *continued*

| Number | Date | Amount | Number | Date | Amount | Number | Date | Amount |
|--------|------|--------|--------|------|--------|--------|------|--------|
| 180436 | 07/30 | 3,310.00 | 180465 | 07/23 | 3,310.00 | 180491 | 07/23 | 120,000.00 |
| 180437 | 07/11 | 1,655.00 | 180466 | 07/17 | 461.82 | 180493 | 07/17 | 500.00 |
| 180439 | 07/09 | 2,000.00 | 180467 | 07/17 | 390.45 | 180494 | 07/23 | 26,409.16 |
| 180440 | 07/09 | 1,600.00 | 180469 | 07/18 | 20.99 | 180495 | 07/25 | 35,143.87 |
| 180441 | 07/12 | 2,096.33 | 180470 | 07/16 | 323.27 | 180496 | 07/23 | 11,529.11 |
| 180442 | 07/16 | 9,181.80 | 180471 | 07/17 | 9,000.00 | 180498 | 07/23 | 2,755.10 |
| 180443 | 07/23 | 1,655.00 | 180472 | 07/19 | 15,000.00 | 180499 | 07/18 | 353.92 |
| 180444 | 07/16 | 1,655.00 | 180473 | 07/16 | 1,000.00 | 180500 | 07/24 | 502.30 |
| 180445 | 07/11 | 3,310.00 | 180474 | 07/20 | 2,000.00 | 180501 | 07/17 | 2,500.00 |
| 180447 | 07/16 | 333.32 | 180475 | 07/12 | 3,000.00 | 180502 | 07/17 | 1,000.00 |
| 180448 | 07/09 | 15,000.00 | 180476 | 07/12 | 3,586.49 | 180503 | 07/18 | 2,500.00 |
| 180449 | 07/10 | 10,792.64 | 180477 | 07/12 | 2,430.39 | 181000 | 07/30 | 1,288.00 |
| 180450 | 07/09 | 3,000.00 | 180478 | 07/20 | 15,000.00 | 181001 | 07/31 | 64.99 |
| 180451 | 07/12 | 1,400.00 | 180479 | 07/16 | 26,975.83 | 181002 | 07/30 | 2,000.00 |
| 180453 | 07/17 | 39,603.51 | 180480 | 07/17 | 500.00 | 181003 | 07/30 | 3,500.00 |
| 180454 | 07/09 | 70,000.00 | 180481 | 07/18 | 9,000.00 | 181004 | 07/27 | 2,000.00 |
| 180455 | 07/17 | 1,942.16 | 180482 | 07/16 | 4,500.00 | 181005 | 07/27 | 500.00 |
| 180456 | 07/09 | 330.00 | 180483 | 07/13 | 800.00 | 181006 | 07/30 | 5,000.00 |
| 180457 | 07/10 | 10,000.00 | 180485 | 07/16 | 500.00 | 181009 | 07/30 | 2,000.00 |
| 180458 | 07/16 | 2,000.00 | 180486 | 07/17 | 1,500.00 | 181016 | 07/30 | 42,149.63 |
| 180459 | 07/16 | 5,740.00 | 180487 | 07/23 | 460.73 | 181017 | 07/30 | 150.00 |
| 180461 | 07/17 | 3,000.00 | 180488 | 07/16 | 150.00 | 181020 | 07/31 | 5,000.00 |
| 180463 | 07/16 | 1,500.00 | 180489 | 07/17 | 1,286.84 | 181060 | 07/31 | 500.00 |
| 180464 | 07/18 | 43.29 | 180490 | 07/16 | 800.00 | | | |

### Interest Summary

| | | | |
|---|---|---|---|
| **2018 YTD DIV/INT:** | $2.96 | **IRA Dividends:** | $0.00 | **Finance Charges:** | $0.00 |
| **YTD DIV/INT Withheld:** | $0.00 | | | **YTD DIV/INT Penalties:** | $0.00 |

EXHIBIT "1"

# EXHIBIT "2"

Check Image                                                                      Page 1 of 1

**Image of 181237**   [ Close ] [ Print ]



CHURCH FOR THE HEALTHY SELF
PRAY TODAY AND EVERDAY
3131 MCKINNEY AVE.
SUITE 600
DALLAS, TX 75204

Prestige Community CU
Dallas, Texas 95240
32-8031/3110
32-8031/3110

8/31/2018

PAY TO THE
ORDER OF   Matthew Shelton                                    $ **10,000.00

Ten Thousand and 00/100************************************************ DOLLAR

Matthew Shelton
32 Southeast Second Ave.
Unit 147
Del Ray Beach, FL 33444

MEMO                                                   Kelly E. Florek
September 2018 Services                                AUTHORIZED SIGNATURE

⑈181237⑈ ⑆311080311⑆   0000095803⑈

**Back of Check**

CHECK HERE IF MOBILE DEPOSIT

EXHIBIT "2.1"

Check Image    Page 1 of 1

**Image of 181427** | Close | Print



CHURCH FOR THE HEALTHY SELF
PRAY TODAY AND EVERDAY
3131 MCKINNEY AVE.
SUITE 600
DALLAS, TX 75204

Prestige Community CU
Dallas, Texas 95240
32-8031/3110
32-8031/3110

9/28/2018

PAY TO THE
ORDER OF    Matthew Shelton    $ **10,000.00

Ten Thousand and 00/100*************************************************    DOLLAR

Matthew Shelton
32 Southeast Second Ave.
Unit 147
Del Ray Beach, FL 33444

MEMO    October 2018 Services

AUTHORIZED SIGNATURE

⑈181427⑈ ⑆31108031⑆    00000⑈5803⑈

**Back of Check**

☐ CHECK HERE IF MOBILE DEPOSIT

EXHIBIT "2.2"

Check Image                                                    Page 1 of 1

**Image of 181817** [ Close ] [ Print ]



Check Image

Image of 182067 | Close | Print

CHURCH FOR THE HEALTHY SELF
3131 MCKINNEY AVE.
SUITE 600
DALLAS, TX 75204
PRAY TODAY AND EVERY DAY

Prestige Community CU
32-8031/3110

01/02/2019

PAY TO THE
ORDER OF        Mathew Shelton                                   $**10,000.00

Ten thousand and 00/100**************************************************************** DOLLARS

Mathew Shelton

MEMO  Deposit Bank of America
      Rtg. #063100277

⑆ **003665811576  ⑆182067⑆ ⑆311080311⑆    0000095803⑆

Kelly E. Flood

**Back of Check**

Seq:  112
Batch:  569433
Date: 01/02/19

Seq:00112 01/02/19
BAT:569433 CC:8858890121
WT:01 LTPS:Dallas CT
BC:Orland Park BC IL4-227

EXHIBIT "2.4"

12/21/22, 9:44 AM                                          Check Image

**Image of 182381**   [Close]  [Print]



CHURCH FOR THE HEALTHY SELF
3131 MCKINNEY AVE.
SUITE 600
DALLAS, TX 75204
PRAY TODAY AND EVERY DAY

Prestige Community CU
32-8031/3110

182381

01/31/2019

PAY TO THE ORDER OF   Mathew Shelton                                    $  **10,000.00

Ten thousand and 00/100**                                                      DOLLARS

Mathew Shelton

MEMO   BOA#003665811576

Kelly E. Fitch

⑈182381⑈ ⑆311080311⑈     0000095803⑈

**Back of Check**

https://memberserver.prestigecu.org/smePresti/servlet/com.sos.webteller.accountaccess.CheckImage                  1/1

EXHIBIT "2.5"

EXHIBIT "3"

# SMILEY | WANG-EKVALL

Insolvency.  Real Estate.  Business Litigation.

Kyra E. Andrassy

Timothy W. Evanston

Kraig C. Kilger

Robert S. Marticello

Sharon Oh-Kubisch

Michael L. Simon

Philip E. Strok

May 16, 2022

**VIA U.S. MAIL – CERTIFIED MAIL RETURN RECEIPT REQUESTED**

Matthew Alan Shelton
5500 N Military Trail, Apt. 430
Boca Raton, FL 33496-3567

Re:     Securities and Exchange Commission v. Kent R.E. Whitney, et al.
          United States District Court, Central District of California Case No. SACV 19-499 JVS (KESx)

Dear Mr. Shelton:

This office represents Robert P. Mosier, Receiver ("Receiver") for The Church for the Healthy Self aka CHS Trust ("CHS Trust"), CHS Asset Management, Inc. ("CAM"), iCare Financial Solution, Inc. ("iCare" and, together with CHS Trust and CAM, the "Receivership Entities"), Kent R.E. Whitney ("Mr. Whitney"), David Lee Parrish ("Mr. Parrish"), and Ha Ngoc T. Nguyen aka Ngoc Nguyen ("Ms. Nguyen") (together, the Receivership Entities, Mr. Whitney, Mr. Parrish, and Ms. Nguyen are referred to as the "Receivership Defendants" and the receivership estate is referred to as the "Receivership Estate"), with full powers of an equity receiver.  (See enclosed Exhibit "1" which is a copy of the Order Appointing Robert P. Mosier as the Receiver of the Receivership Defendants.)

Based on our review of the bank records, the Receiver has established that during the four calendar years prior to his appointment, the Receivership Entities transferred funds to you totaling $60,000.00 through your use of the Receivership Entities' bank account for services you allegedly provided (the "Transfers").  In exchange, the Receivership Entities did not receive a reasonably equivalent value for the Transfers.  (See enclosed Exhibit "2" which is a list of funds you received[1].)  The Transfers were also made with the actual intention of defrauding the investors in the Receivership Entities.  Given that the Receivership Defendants were operating an investment fraud with no legitimate business in violation of securities laws, there would appear to be no legitimate services that were provided so that no reasonably equivalent value was received for the Transfers.  As a result, the Transfers are recoverable by the Receiver.  The Receiver notes that there may also be claims against you for aiding and abetting a fraud.

---

[1]  The Receiver is not seeking to recover payments made for the benefit of innocent investors but only for fraudulent transfers recoverable to the Receivership Entities.

3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel  714 445-1000
Fax 714 445-1002    www.swelawfirm.com

2908751.1

EXHIBIT "3"



Mr. Matthew Alan Shelton
Securities and Exchange Commission v. Kent R.E. Whitney, et al.
May 16, 2022
Page 2


Pursuant to a court order, the Receiver is authorized to settle claims for 85% of the amount in dispute if payment is made in one lump sum or 90% if paid over a period not to exceed twelve months.  If this settlement offer is declined, the Receiver will file suit against you for the full amount of the Transfers and include additional causes of action related to your alleged services.  Presumably, you do not want this to be a matter of public record so will elect to resolve this consensually.  To that end, we have enclosed the approved form of the settlement agreement for your review and execution.  (See enclosed Exhibit "3" which is the proposed settlement agreement.)

If you choose not to resolve this consensually by **June 16, 2022**, then the Receiver will commence a lawsuit against you in the United States District Court where the above-referenced case is currently pending.  The Receiver sincerely hopes that the District Court's intervention will not be necessary.

Should you have any questions or would like to discuss this matter further, please feel free to contact me.

Very truly yours,

SMILEY WANG-EKVALL, LLP

*/s/ Sharon Oh-Kubisch*

Sharon Oh-Kubisch
Of Counsel

Enclosures as noted above

cc:    Robert P. Mosier, Receiver

EXHIBIT "3"

# EXHIBIT "4"

1 | **SMILEY WANG-EKVALL, LLP**
Kyra E. Andrassy, State Bar No. 207959
2 | *kandrassy@swelawfirm.com*
Sharon Oh-Kubisch, State Bar No. 197573
3 | *sokubisch@swelawfirm.com*
Michael L. Simon, State Bar No. 300822
4 | *msimon@swelawfirm.com*
3200 Park Center Drive, Suite 250
5 | Costa Mesa, California 92626
Telephone: 714 445-1000
6 | Facsimile:  714 445-1002

7 | Attorneys for Robert P. Mosier,
Receiver

8 |

9 | **UNITED STATES DISTRICT COURT**

10 | **CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION**

11 |

12 | ROBERT P, MOSIER, Federal | Case No.
13 | Equity Receiver for the Church for the Healthy Self aka CHS Trust, | **COMPLAINT TO AVOID AND**
14 | CHS Asset Management, Inc., and iCare Financial Solution, Inc., | **RECOVER FRAUDULENT TRANSFERS**
15 | | Plaintiffs,
16 |
17 | v.
18 | MATTHEW ALAN SHELTON,
| Defendant.
19 |

20 |     Plaintiff Robert P. Mosier, in his capacity as the federal equity receiver

21 | ("Receiver") for The Church for the Healthy Self a/k/a CHS Trust ("CHS"),

22 | CHS Asset Management, Inc. ("CAM"), and iCare Financial Solution, Inc.

23 | ("iCare" and, together with CHS and CAM, the "Receivership Entities"),

24 | alleges as follows:

25 | ///

26 | ///

27 | ///

28 | ///

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

EXHIBIT "4"

## I.    **INTRODUCTION**

1.    Beginning in or about September 2014 and continuing to on or about April 4, 2019, Defendants Kent R.E. Whitney also known as Emerson Ralph ("Whitney"), Ngoc Ha T. Nguyen ("Ha Nguyen"), and David Lee Parrish ("Parrish") (collectively, the "Individual Defendants") utilized the Receivership Entities to orchestrate at least a $33 million Ponzi scheme that primarily targeted the Vietnamese communities of Orange County and San Jose, California.

2.    The vast majority of the funds that were raised were misappropriated by Whitney, Parrish and Ha Nguyen, who spent many millions of dollars of investor funds on personal expenses for themselves and for family members and friends.  What they did not spend on personal expenses was used to make Ponzi payments to investors.  This action is being brought to recover funds that the Receiver alleges were fraudulently transferred to or for the benefit of the Defendant.

## II.    **JURISDICTION AND VENUE**

3.    On March 13, 2019, the Securities and Exchange Commission filed a civil enforcement action against CHS, CAM, Whitney and Parrish, initiating case number 8:19-cv-00499 (the "SEC Action").  By order entered on March 14, 2019, the Court appointed the Receiver over CHS and CAM, and the assets of Whitney and Parrish.

4.    This Court has jurisdiction over this action pursuant to 28 USC § 1367 because this action is ancillary to the SEC Action, and the receivership is pending before this Court.  *See Donell v. Kowell*, 533 F.3d 762, 769 (9th Cir. 2008).

5.    This action involves the same series of transactions as the SEC Action.

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

6.      Venue is proper in this district because this action is ancillary to the SEC Action and the receivership remains pending before this Court.

## III.    THE PARTIES

7.      The Receiver is the duly appointed and acting federal equity receiver of the Receivership Entities.

8.      On information and belief, defendant Matthew Alan Shelton ("Shelton" or "Defendant"), at all times herein was and is an individual residing in the State of Florida, County of Palm Beach.

## IV.    GENERAL ALLEGATIONS

### A.    The SEC Action

9.      On March 13, 2019, the SEC filed its original complaint against CHS, CAM, Whitney, and Parrish ("SEC Complaint"), accompanied by an *Ex Parte Application for a Temporary Restraining Order and Orders (1) Freezing Assets; (2) Prohibiting the Destruction of Documents; (3) Granting Expedited Discovery; (4) Requiring Defendants to Surrender Passports; and (4) Requiring Accountings* that, among other things, ordered the defendants to show cause why a preliminary injunction should not be granted.  .

10.      The SEC Complaint alleged that the defendants (1) committed fraud in violation of the anti-fraud provisions of the federal securities laws, specifically Section 17(a) of the Securities Act of 1933  [15 U.S.C. § 77q(a)] and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

11.      On March 14, 2019, the District Court entered an order appointing the Receiver over CHS and CAM, and the assets of Whitney and Parrish.

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

EXHIBIT "4"

12.    On September 11, 2019, the SEC amended its original Complaint to add iCare and Ha Nguyen as defendants and to add relief defendants.  The SEC Action remains pending.

13.    On September 12, 2019, the District Court entered an amended order (1) expanding the Receivership Order in the SEC Action to include Ha Nguyen and iCare, and (2) freezing assets and requiring Ha Nguyen and iCare to provide an accounting.

14.    On June 8, 2021, the District Court entered an order in the SEC Action authorizing the Receiver to pursue fraudulent transfer actions.

**B.    Whitney's Plea Agreement with the USAO**

15.    On March 18, 2020, Whitney entered into a plea agreement with the United States Attorney's Office through which he admitted to engaging in a scheme to defraud investors through CHS Trust and related entities, to obtain money or property through false promises or statements, and acting with the intent to defraud.  In that plea agreement, Whitney admitted that he was, in fact, guilty of two counts including mail fraud, in violation of Title 18, United States Code, Section 1341, and filing false tax returns for the years 2017 and 2018, in violation of Title 26, United States Code, Section 7206(1).

**C.    The Fraudulent History of Whitney**

16.    Before holding himself out to be a minister, Whitney was a fraudster.  On August 29, 2003, Whitney was registered with the Commodity Futures Trading Commission ("CFTC") as a floor broker.  From May 2008 through April 2010, Whitney engaged in a scheme to avoid posting more than $96 million of margin calls when placing orders for commodity options traded on the New York Mercantile Exchange and the Chicago Mercantile Exchange. The CFTC sued Whitney on December 10, 2010, and obtained a consent order against him on May 22, 2012, permanently barring him from the commodities industry and imposing a $600,000 civil penalty.

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

EXHIBIT "4"

17.    In September 2011, Whitney pled guilty to one count of wire fraud in connection with the margin call fraud scheme. *See United States v. Whitney*, Case No. 1:11-cr-108 (N.D. Ill. [Eastern Div.]).  As part of his scheme, he obtained more than $600,000 from approximately 10 investors for a purported commodity pool investment and for trading in futures accounts to be held jointly between Whitney and the investors. He misrepresented the use of investor funds, investor returns, and the investment's risk.  Whitney misappropriated most of the money he received, generated bogus account statements, and made Ponzi payments.  On December 8, 2011, Whitney was sentenced to 44 months imprisonment. Whitney was released from federal custody in June 2014.

**D.    The Operation of CHS**

18.    Two months after being released from prison, Whitney became an ordained minister through an on-line program in August 2014.

19.    A month later, Whitney formed CHS, purportedly as a nonprofit, religious organization.  The Individual Defendants (together, the Receivership Entities and Individual Defendants are referred to as the "Receivership Defendants"), and others acting at their direction used the internet, radio and television, as well as in-person meetings and brochures, to lure investors into a fraudulent investment scheme primarily targeting the Vietnamese communities in Orange County and San Jose, California. Recordings of these appearances were often uploaded to YouTube.

20.    In these appearances, CHS representatives, at the direction of Whitney, made the following claims: (1) that CHS Trust, the investment arm of CHS, guaranteed an annual rate of return of 12%; (2) guaranteed return of principal with no risk because the investments were backed by the FDIC and SIPC (Securities Investor Protection Program); (3) that in the past five years the worst return CHS realized was a 1.5% profit for the month of

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

EXHIBIT "4"

January 2015; (5) that the traders used by CHS had not lost money in 15 years; and (6) that CHS was audited by KPMG.  At the time these statements were made, Whitney knew the statements were false or misleading.  CHS did not produce a 12% annual return; despite millions of dollars deposited from CHS investors, little investor money went into any trading accounts in 2018; CHS AM was not formed until 2017, thus the statements regarding the investment performance over the past five years and fifteen years were misleading; and CHS was not audited by KPMG.

21.    At the direction of the Individual Defendants and others (depending upon which salesperson the investor had spoken to) and relying upon these false statements, investors wrote checks or gave cash to CHS or iCare, and rolled over retirement, investment, or college savings assets to CAM bank accounts where the funds were commingled and then transferred to CHS.

22.    As part of the scheme, Whitney directed that monthly statements be sent to victims that contained false reports of investment returns.  Whitney intended to lull victims into believing their money had been invested and was consistent with the false claims made by CHS representatives.

23.    The vast majority of investor funds that were deposited into CHS's bank account were misappropriated by the Receivership Defendants, who enriched themselves and used investor funds to finance their lifestyle, including paying for vacations, expensive meals out, and designer clothes for themselves and for their friends.  CHS also used approximately $11 million in Ponzi-type payments to older investors, taken from money brought in by new investors.  What little was invested was lost in the market.

24.    Between May 2, 2015 and March 13, 2019, CHS raised approximately $33 million from investors.

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

EXHIBIT "4"

25.     The Receivership Defendants misappropriated or dissipated the vast majority of the roughly $33 million raised from investors, except for the over $5 million that was seized just before the filing of the SEC Action. CHS returned approximately $12.8 million of the amount raised to investors through Ponzi payments or by making payments to creditors on their behalf.

**B.     Defendant**

26.     During the four calendar years prior to the Receiver's appointment, CHS transferred funds to or for the benefit of Defendant totaling $60,000.00.  These transfers were made through the use of a checking account held in the name of CHS at Prestige Community Credit Union ("Transfers").  A list of the Transfers is hereto and incorporated herein as Exhibit "A".

27.     Given that the Receivership Entities were operating an investment fraud with no legitimate business in violation of securities laws, there would appear to be no legitimate services that were provided by the Defendant to the Receivership Entities so that no reasonably equivalent value was received for the Transfers.

28.     The Receiver has demanded the return of the Transfers from Defendant but not received a response.

## FIRST CLAIM FOR RELIEF

**(For Avoidance and Recovery of Fraudulent Transfers Pursuant to California Civil Code Section 3439.04(a)(1))**

29.      The Receiver realleges and incorporates by this reference paragraphs 1 through 28, above, as though set forth herein in full.

30.     During the four calendar years prior to the Receiver's appointment, payments of $60,000.00 were made to or for the benefit of the Defendant by CHS.

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

31.    The payments by CHS to Defendant were made with the actual intent to hinder, delay or defraud its creditors.

32.    The payments made to Defendant are avoidable by the Receiver under applicable law, including California Civil Code Section 3439.04(a)(1).

33.    The Receiver is entitled to a recovery against Defendant in a sum of not less than $60,000.00, with interest thereon at the legal rate.

## **SECOND CLAIM FOR RELIEF**

### **(For Avoidance and Recovery of Fraudulent Transfers Pursuant to California Civil Code Section 3439.04(a)(2))**

34.    The Receiver realleges and incorporates by this reference paragraphs 1 through 33, above, as though set forth herein in full.

35.    The Transfers made by CHS to Defendant were made without CHS receiving reasonably equivalent value in exchange for the transfers.

36.    At the time the Transfers were made by CHS to or for the benefit of the Defendant, CHS was engaged or was about to engage in a business or a transaction for which its remaining assets were unreasonably small in relation to the business or transaction.

37.    At the time CHS made the Transfers, CHS intended to incur, or believed or reasonably should have believed that it would incur debts beyond its ability to pay as such debts became due.

38.    The Transfers made to or for the benefit of the Defendant are avoidable by the Receiver under applicable law, including California Civil Code Section 3439.04(a)(2).

39.    The Receiver is entitled to recovery against Defendant in a sum of not less than $60,000.00, with interest thereon at the legal rate.

///

///

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

EXHIBIT "4"

### **THIRD CLAIM FOR RELIEF**

### **(For Avoidance and Recovery of Fraudulent Transfers Pursuant to California Civil Code Section 3439.05)**

40.    The Receiver realleges and incorporates by this reference paragraphs 1 through 39, above, as though set forth herein in full.

41.    CHS currently has creditors whose claims arose before the Transfers were made.

42.    CHS received less than reasonably equivalent value in exchange for the Transfers made to or for the benefit of Defendant.

43.    At the time of the Transfers, CHS was insolvent or became insolvent as a result of the Transfers.

44.    The Transfers made to or for the benefit of Defendant are avoidable by the Receiver under applicable law, including California Civil Code Section 3439.05.

45.    The Receiver is entitled to recovery against Defendant in a sum of not less than $60,000.00, with interest thereon at the legal rate.

### **PRAYER**

WHEREFORE, the Receiver prays as follows:

1.    For judgment against Defendant in the sum of $60,000.00;

2.    For interest at the legal rate on the amount of the Transfers from the date of the Transfers;

3.    For costs of suit; and

4.    For such other and further relief as the Court deems appropriate.

DATED:  July 22, 2022          SMILEY WANG-EKVALL, LLP

By: _____

SHARON OH-KUBISCH
Attorneys for Robert P. Mosier,
Receiver

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

EXHIBIT "4"

EXHIBIT "5"

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT P. MOSIER<br><br>PLAINTIFF(S)<br><br>v.<br><br>MATTHEW ALAN SHELTON<br><br>DEFENDANT(S). | CASE NUMBER:<br><br>8:22−cv−01361−JVS−KES<br><br>**DEFAULT BY CLERK**<br>**F.R.Civ.P. 55(a)** |

    It appearing from the records in the above−entitled action that summons has been served upon the defendant(s) named below, and it further appearing from the affidavit of counsel for Plaintiff, and other evidence as required by F.R.Civ.P. 55(a), that each of the below defendants have failed to plead or otherwise defend in said action as directed in said Summons and as provided in the Federal Rules of Civil Procedure:

    Now, therefore, on request of counsel, the DEFAULT of each of the following named defendant(s) is hereby entered:

  Matthew Alan Shelton

Clerk, U.S. District Court

  November 17, 2022

Date

By  _/s/ Evelyn Synagogue_

Deputy Clerk

CV−37 (10/01)                    **DEFAULT BY CLERK F.R.Civ.P. 55(a)**

EXHIBIT "5"

# DECLARATION OF ROBERT P. MOSIER

I, Robert P. Mosier, declare as follows:

1.    I know each of the following facts to be true of my own personal knowledge, except as otherwise stated and, if called as a witness, I could and would competently testify with respect thereto.  I make this declaration in support of the Receiver's motion for entry of default judgment ("Motion") against the defendant, Matthew Alan Shelton (the "Defendant").  Unless otherwise defined in this declaration, all terms defined in the Motion are incorporated herein by this reference.

2.    On March 13, 2019, the Securities and Exchange Commission ("SEC") filed a civil complaint against The Church for the Healthy Self aka CHS Trust ("CHS"), CHS Asset Management, Inc. ("CAM"), Kent R.E. Whitney ("Whitney"), and David Lee Parrish ("Parrish") and sought the appointment of a receiver.

3.    In September 2019, the SEC amended the complaint to add a number of defendants, including iCare Financial Solution, Inc. ("iCare") and Ha Ngoc T. Nguyen, and sought to expand the scope of the receivership estates to include iCare and Nguyen.  The Court granted that relief by order entered on September 12, 2019.  For purposes of this Application, I refer to CHS, CAM, and iCare as the "Receivership Entities" and the Receivership Entities, Whitney, Parrish, and Nguyen together as the "Receivership Defendants."  Their receivership estates are together referred to as the "Receivership Estates."

4.    As detailed in the SEC's application filed on September 11, 2019 to expand the scope of the receivership estates, iCare and Nguyen were named as defendants in the amended complaint and added to the receivership estates because of their relationship with CHS Trust and Whitney.  Nguyen was iCare's principal, but she and Whitney together

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1   solicited investors.  Subsequent to this merger, Nguyen and iCare continued

2   to solicit investments, depositing investor funds into iCare's account and

3   then writing checks payable to CHS.  I am informed that CAM was set up to

4   accept deposits from brokerage accounts, and after depositing checks from

5   brokerage firms remitting funds on behalf of investors, it would transfer the

6   funds to CHS's operating account.  I have reviewed the bank records for the

7   Receivership Entities and determined that money flowed freely between the

8   three entities.

9         5.      Based on my analysis of the books and records of the

10  Receivership Defendants, I have confirmed the SEC's allegations and

11  established that between 2014 and March 14, 2019, iCare and CHS

12  together raised approximately $33.4 million from approximately 500 non-

13  insider investors, heavily targeting the Vietnamese communities in San

14  Jose, California, and Orange County, California.  Using funds obtained from

15  other investors, the Receivership Entities returned approximately $6.1

16  million to investors, leaving approximately $27.3 million in net investments

17  from non-insiders, most of which was dissipated by the individual

18  Receivership Defendants to fund their lavish lifestyles, including traveling,

19  purchasing designer clothing and jewelry, and eating out regularly at high-

20  end restaurants.  What was left was either seized by the federal government

21  just prior to the SEC's commencement of this case or collected by me.

22        6.      In 2020, the Office of the United States Attorney charged

23  Whitney with mail fraud and tax fraud.  Kent Whitney has entered into a plea

24  agreement with the U.S. Attorney's office resolving the criminal charges.  A

25  true and correct copy of the plea agreement entered into by Mr. Whitney is

26  attached hereto as Exhibit "6."

27  ///

28

7.     I have reviewed the bank records for all of the Receivership Defendants.  Most (and in some cases all) of the funds coming into the individual Receivership Defendants' accounts are traceable to the Receivership Entities, and all of the funds coming into the Receivership Entities are traceable to investors.  The Receivership Entities used the funds from the investors to pay various insiders and personal expenses on behalf of insiders.  For example, CHS paid approximately $2.6 million to American Express for a card in Whitney's name that was used for personal expenses of Whitney and a number of his friends.  In addition, investor funds were also used to make distributions to other investors.

8.     The Receivership Defendants were part of a unified scheme to defraud.  Investors based in San Jose typically invested their money through iCare, at least until the "merger" with CHS in March 2018, and iCare would then write a check to CHS.  Investors who were investing through qualified retirement plans had their funds deposited with CAM, which then transferred the money to CHS.  Under any scenario, the money traceable to investors that was deposited into bank accounts ended up in CHS's account with Prestige Community Credit Union in Dallas, Texas.  CHS then made transfers that benefitted Nguyen, Parrish, and Whitney, and their friends and relatives.  Based on my review and records reviewed to date, it is my

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1  understanding that Defendant Matthew Shelton received and/or benefitted

2  from payments received from the Receivership Entities.

3      I declare under penalty of perjury under the laws of the United States

4  of America that the foregoing is true and correct.

5      Executed on this *21*ˢᵗ day of December, 2022, at Costa Mesa,

6  California.

7

8

9  ROBERT P. MOSIER

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000  •  Fax 714 445-1002

EXHIBIT "6"

1  NICOLA T. HANNA
   United States Attorney
2  BENJAMIN R. BARRON
   Assistant United States Attorney
3  Chief, Santa Ana Branch Office
   GREGORY W. STAPLES
4  Assistant United States Attorney
   California State Bar No. 155505
5      411 West Fourth Street, Suite 8000
       Santa Ana, California  92701
6      Telephone: (714) 338-3500
       Facsimile: (714) 338-3523
7      Email: Greg.Staples@usdoj.gov

8  Attorneys for Plaintiff
   UNITED STATES OF AMERICA

9

10                  UNITED STATES DISTRICT COURT

11              FOR THE CENTRAL DISTRICT OF CALIFORNIA

12  UNITED STATES OF AMERICA,          8:20-cr-00052-JLS

13            Plaintiff,
                                       PLEA AGREEMENT
14                 v.

15  KENT R.E. WHITNEY,

16            Defendant.

17

18     1.   This constitutes the plea agreement between Kent R.E.

19  Whitney ("defendant") and the United States Attorney's Office for the

20  Central District of California (the "USAO") in the above-captioned

21  case.  This agreement is limited to the USAO and cannot bind any

22  other federal, state, local, or foreign prosecuting, enforcement,

23  administrative, or regulatory authorities.

24                  DEFENDANT'S OBLIGATIONS

25     2.   Defendant agrees to:

26         a.   Give up the right to indictment by a grand jury and,

27  at the earliest opportunity requested by the USAO and provided by the

28  Court, appear and plead guilty to a two-count information in the form

**FILED**
CLERK, U.S. DISTRICT COURT

**4/15/2020**

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ eva _____ DEPUTY

1   attached to this agreement as Exhibit A or a substantially similar

2   form, which charges defendant with mail fraud in violation of 18

3   U.S.C. § 1341, and filing of a false tax return in violation of 26

4   U.S.C. § 7206(1).

5           b.   Not contest facts agreed to in this agreement.

6           c.   Abide by all agreements regarding sentencing contained

7   in this agreement.

8           d.   Appear for all court appearances, surrender as ordered

9   for service of sentence, obey all conditions of any bond, and obey

10  any other ongoing court order in this matter.

11          e.   Not commit any crime; however, offenses that would be

12  excluded for sentencing purposes under United States Sentencing

13  Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not

14  within the scope of this agreement.

15          f.   Be truthful at all times with the United States

16  Probation and Pretrial Services Office and the Court.

17          g.   Pay the applicable special assessments at or before

18  the time of sentencing unless defendant has demonstrated a lack of

19  ability to pay such assessments.

20      3.   Defendant agrees to cooperate with the Internal Revenue

21  Service in the determination of defendant's tax liability for 2017

22  and 2018. Defendant agrees that:

23      a.   Defendant will file, prior to the time of sentencing,

24  amended returns for the years subject to the above admissions,

25  correctly reporting unreported income; will, if requested to do so by

26  the Internal Revenue Service, provide the Internal Revenue Service

27  with information regarding the years covered by the returns; pay any

28  taxes due on a schedule to be determined by the Court and Probation

EXHIBIT "6"

as a condition of supervised release; and will thereafter promptly
pay to the Fiscal Clerk of the Court all additional taxes and all
penalties and interest thereafter determined by the Internal Revenue
Service to be owing as a result of any computational error(s).
Payments may be made to the Clerk, United States District Court,
Fiscal Department, 255 East Temple Street, Room 1178, Los Angeles,
California 90012.

b.    Nothing in this agreement forecloses or limits the ability
of the Internal Revenue Service to examine and make adjustments to
defendant's returns after they are filed.

c.    Defendant will not, after filing the returns, file any
claim for refund of taxes, penalties, or interest for amounts
attributable to the returns filed in connection with this plea
agreement.

d.    Defendant is liable for the fraud penalty imposed by the
Internal Revenue Code, 26 U.S.C. § 6663, on the understatements of
tax liability for 2017 and 2018.

e.    Defendant gives up any and all objections that could be
asserted to the Examination Division of the Internal Revenue Service
receiving materials or information obtained during the criminal
investigation of this matter, including materials and information
obtained through grand jury subpoenas.

f.    Defendant will sign closing agreements with the Internal
Revenue Service contemporaneously with the signing of this plea
agreement, permitting the Internal Revenue Service to assess and
collect the total sum of $393,704 for the defendant's tax years 2017
and 2018, respectively), which comprises the tax liabilities on the
tax liabilities, as provided by law.

3

EXHIBIT "6"

THE USAO'S OBLIGATIONS

4.    The USAO agrees to:

    a.    Not contest facts agreed to in this agreement.

    b.    Abide by all agreements regarding sentencing contained in this agreement.

    c.    At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offenses up to and including the time of sentencing, recommend a two-level reduction in the applicable Sentencing Guidelines offense level, pursuant to U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an additional one-level reduction if available under that section.

    d.    Recommend that defendant be sentenced to a term of imprisonment no higher than the low end of the applicable Sentencing Guidelines range, provided that the offense level used by the Court to determine that range is 32 or higher and provided that the Court does not depart downward in offense level or criminal history category.  For purposes of this agreement, the low end of the Sentencing Guidelines range is that defined by the Sentencing Table in U.S.S.G. Chapter 5, Part A.

NATURE OF THE OFFENSES

5.    Defendant understands that for defendant to be guilty of the crime charged in count one, that is, mail fraud, in violation of Title 18, United States Code, Section 1341, the following must be true: (1) defendant made up or knowingly participated in a scheme or plan for obtaining money or property by making false promises or statements; (2) defendant knew that the promises or statements were false; (3) the promises or statements were material, that is they would reasonably influence a person to part with money or property;

4

EXHIBIT "6"

(4) defendant acted with the intent to defraud; and (5) the defendant used, or caused to be used, the mails to carry out or attempt to carry out an essential part of the scheme.  Defendant admits that defendant is, in fact, guilty of this offense as described in count one of the information.

6.    For defendant to be guilty of the crime charged in count two, that is, filing a false tax return, in violation of Title 26, United States Code, Section 7206(1), the following must be true: (1) defendant signed and filed a tax return for the years 2017 and 2018 that he knew contained false information as to a material matter; (2) the return contained a written declaration that it was being signed subject to the penalties of perjury; and (3) in filing the false tax return, the defendant acted willfully.  Defendant admits that defendant is, in fact, guilty of this offense as described in count two of the information.

<u>PENALTIES AND RESTITUTION</u>

7.    Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 1341, is: 20 years of imprisonment; a 3-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

8.    Defendant understands that the statutory maximum sentence that the Court can impose for violating Title 26, United States Code, Section 7206(1), is: 3 years' imprisonment; a one-year period of supervised release; a fine of $100,000; and a mandatory special assessment of $100.

EXHIBIT "6"

9.   Defendant understands, therefore, that the total maximum sentence for all offenses to which defendant is pleading guilty is: 23 years imprisonment; a 3-year period of supervised release; a fine of $350,000 or twice the gross gain or gross loss resulting from the offenses, whichever is greatest; and a mandatory special assessment of $200.

10.   Defendant understands that defendant will be required to pay full restitution to the victim(s) of the offenses to which defendant is pleading guilty.  Defendant agrees that, in return for the USAO's compliance with its obligations under this agreement, the Court may order restitution to persons other than the victim(s) of the offenses to which defendant is pleading guilty and in amounts greater than those alleged in the counts to which defendant is pleading guilty.  In particular, defendant agrees that the Court may order restitution to any victim of any of the following for any losses suffered by that victim as a result: (a) any relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with the offenses to which defendant is pleading guilty; and (b) any charges not prosecuted pursuant to this agreement as well as all relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with those charges.  The parties currently believe that the applicable amount of restitution is approximately $22,800,000, but recognize and agree that this amount could change based on facts that come to the attention of the parties prior to sentencing.

11.   Defendant understands and agrees that the Court: (a) may order defendant to pay restitution in the form of any additional taxes, interest, and penalties that defendant owes to the United States based upon the count of conviction and any relevant conduct;

6

EXHIBIT "6"

1  and (b) must order defendant to pay the costs of prosecution, which

2  may be in addition to the statutory maximum fine stated above.

3      12.  Defendant understands that supervised release is a period

4  of time following imprisonment during which defendant will be subject

5  to various restrictions and requirements.  Defendant understands that

6  if defendant violates one or more of the conditions of any supervised

7  release imposed, defendant may be returned to prison for all or part

8  of the term of supervised release authorized by statute for the

9  offense that resulted in the term of supervised release, which could

10  result in defendant serving a total term of imprisonment greater than

11  the statutory maximum stated above.

12      13.  Defendant understands that, by pleading guilty, defendant

13  may be giving up valuable government benefits and valuable civic

14  rights, such as the right to vote, the right to possess a firearm,

15  the right to hold office, and the right to serve on a jury. Defendant

16  understands that he is pleading guilty to a felony and that it is a

17  federal crime for a convicted felon to possess a firearm or

18  ammunition.  Defendant understands that the convictions in this case

19  may also subject defendant to various other collateral consequences,

20  including but not limited to revocation of probation, parole, or

21  supervised release in another case and suspension or revocation of a

22  professional license.  Defendant understands that unanticipated

23  collateral consequences will not serve as grounds to withdraw

24  defendant's guilty pleas.

25      14.  Defendant and his counsel have discussed the fact that, and

26  defendant understands that, if defendant is not a United States

27  citizen, the convictions in this case makes it practically inevitable

28  and a virtual certainty that defendant will be removed or deported

EXHIBIT "6"

from the United States.  Defendant may also be denied United States

citizenship and admission to the United States in the future.

Defendant understands that while there may be arguments that

defendant can raise in immigration proceedings to avoid or delay

removal, removal is presumptively mandatory and a virtual certainty

in this case.  Defendant further understands that removal and

immigration consequences are the subject of a separate proceeding and

that no one, including his attorney or the Court, can predict to an

absolute certainty the effect of his convictions on his immigration

status.  Defendant nevertheless affirms that he wants to plead guilty

regardless of any immigration consequences that his pleas may entail,

even if the consequence is automatic removal from the United States.

    15.  Defendant understands that, if defendant is not a United

States citizen, the felony convictions in this case may subject

defendant to: removal, also known as deportation, which may, under

some circumstances, be mandatory; denial of citizenship; and denial

of admission to the United States in the future.  The Court cannot,

and defendant's attorney also may not be able to, advise defendant

fully regarding the immigration consequences of the felony

convictions in this case.  Defendant understands that unexpected

immigration consequences will not serve as grounds to withdraw

defendant's guilty pleas.

FACTUAL BASIS

    16.  Defendant admits that defendant is, in fact, guilty of the

offenses to which defendant is agreeing to plead guilty.  Defendant

and the USAO agree to the statement of facts provided below and agree

that this statement of facts is sufficient to support pleas of guilty

to the charges described in this agreement and to establish the

8

Sentencing Guidelines factors set forth in paragraph 18 below but is
not meant to be a complete recitation of all facts relevant to the
underlying criminal conduct or all facts known to either party that
relate to that conduct.

Count One – Mail Fraud

Beginning in or about September 2104 and continuing to on
or about April 4, 2019, defendant engaged in a scheme to defraud
investors through the Church of the Healthy Self ("CHS") and
related entities.  CHS is a Texas non-profit corporation formed
on September 11, 2014.  CHS Asset Management, Inc. ("CHS AM"),
is a Texas for-profit corporation formed on September 20, 2017.
CHS and CHS AM were founded by defendant and they were operated
by defendant out of a strip mall in Westminster, California.
Defendant also claimed to be the Pastor for CHS.  At the
direction of defendant, representatives of CHS appeared on
television and in live seminars at CHS offices in Westminster,
California, soliciting investments in CHS Trust, the investment
arm of CHS.  Recordings of these appearances were often uploaded
to YouTube.  In these appearances, CHS representatives, at the
direction of defendant, made the following claims: (1) that CHS
Trust guaranteed an annual rate of return of 12%; (2) guaranteed
return of principal with no risk because the investments were
backed by the FDIC and SIPC (Securities Investor Protection
Program); (3) that in the past five years the worst return CHS
realized was a 1.5% profit for the month of January 2015; (5)
that the traders used by CHS had not lost money in 15 years; and
(6) that CHS was audited by KPMG.

9

EXHIBIT "6"

At the time these statements were made, defendant knew the statements were false or misleading.  CHS did not produce a 12% annual return; despite millions of dollars deposited from CHS investors, little investor money went into any trading accounts in 2018; CHS AM was not formed until 2017, thus the statements regarding the investment performance over the past five years and fifteen years were misleading; and CHS was not audited by KPMG.

In reliance on the statements made by CHS representatives during television appearances, live seminars, and sales calls from CHS employees, victims sent more than $33 million to CHS from 2014 to 2019.  As part of the scheme, defendant directed that monthly statements of account be sent to victims that contained false reports of investment returns to lull victims into believing their money had been invested and was generating returns consistent with the claims made by CHS representatives.

In furtherance of the scheme, on March 2, 2019, defendant caused the mailing of a monthly statement from CHS Trust to victim V.D. that contained false entries showing a return on investment.

Count Two – Filing False Tax Return

Between at least 2017 and 2018, defendant knowingly and willfully caused false tax returns to be signed and filed that did not report income defendant had received from The Church for the Healthy Self.  Specifically, on or around November 15, 2019, defendant knowingly and willfully caused the signing and filing, under penalty of perjury, an IRS Form 1040 which reported that his total income for the tax year 2018 was $17,539, when in

10

1　　　fact, as defendant knew, his true income was substantially

2　　　higher.  Defendant's true income for tax year 2018 was $452,872,

3　　　which included $435,333 obtained as a result of his fraud,

4　　　resulting in a tax loss of $130,808.

5　　　　　　　　　　　　　SENTENCING FACTORS

6　　　17.  Defendant understands that in determining defendant's

7　sentence the Court is required to calculate the applicable Sentencing

8　Guidelines range and to consider that range, possible departures

9　under the Sentencing Guidelines, and the other sentencing factors set

10　forth in 18 U.S.C. § 3553(a).  Defendant understands that the

11　Sentencing Guidelines are advisory only, that defendant cannot have

12　any expectation of receiving a sentence within the calculated

13　Sentencing Guidelines range, and that after considering the

14　Sentencing Guidelines and the other § 3553(a) factors, the Court will

15　be free to exercise its discretion to impose any sentence it finds

16　appropriate up to the maximum set by statute for the crimes of

17　conviction.

18　　　18.  Defendant and the USAO agree to the following applicable

19　Sentencing Guidelines factors:

20　　　Mail Fraud

21　　　Base Offense Level:　　　　　7　　　　U.S.S.G. § 2B1.1(a)(1)

22　　　Specific Offense
　　　　Characteristics
23
　　　　Loss > $9.5 million　　　　　20　　U.S.S.G. §2B1.1(b)(1)(K)
24
　　　　More than 10 victims　　　　　　　U.S.S.G. § 2B1.1 (b)(2)(A)
25
　　　　　　　　　　　　　　　　　　2
26
　　　　Misrepresentation of　　　　2　　　U.S.S.G. § 2B1.1(b)(9)
27　　　Religious organization

28　　　Adjustments

　　　　　　　　　　　　　　　　11

| | | | |
|---|---|---|---|
| Leadership role | 4 | U.S.G. § 3B1.1(a) | |

Filing False Tax Return

| | | | |
|---|---|---|---|
| Base Offense Level: | 18 | U.S.S.G. § 2T4.1(G) | |

Specific Offense
Characteristics

| | | | |
|---|---|---|---|
| Criminal income > $10,000 | 2 | U.S.S.G. §2T1.1(b)(1) | |

Defendant and the USAO reserve the right to argue that additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate.  At the time of sentencing, provided defendant does not violate the terms of the agreement, the government agrees to recommend that sentences imposed for mail fraud and filing a false tax return run concurrently.

19.  Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

20.  Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

WAIVER OF CONSTITUTIONAL RIGHTS

21.  Defendant understands that by pleading guilty, defendant gives up the following rights:

    a.    The right to persist in a plea of not guilty.

    b.    The right to a speedy and public trial by jury.

    c.    The right to be represented by counsel -- and if necessary have the Court appoint counsel -- at trial.  Defendant understands, however, that, defendant retains the right to be

EXHIBIT "6"

1   represented by counsel -- and if necessary have the Court appoint

2   counsel -- at every other stage of the proceeding.

3         d.   The right to be presumed innocent and to have the

4   burden of proof placed on the government to prove defendant guilty

5   beyond a reasonable doubt.

6         e.   The right to confront and cross-examine witnesses

7   against defendant.

8         f.   The right to testify and to present evidence in

9   opposition to the charges, including the right to compel the

10   attendance of witnesses to testify.

11         g.   The right not to be compelled to testify, and, if

12   defendant chose not to testify or present evidence, to have that

13   choice not be used against defendant.

14         h.   Any and all rights to pursue any affirmative defenses,

15   Fourth Amendment or Fifth Amendment claims, and other pretrial

16   motions that have been filed or could be filed.

17                       WAIVER OF VENUE

18     22.  Having been fully advised by defendant's attorney regarding

19   the requirements of venue with respect to the offenses to which

20   defendant is pleading guilty, to the extent the offenses to which

21   defendant is pleading guilty were committed, begun, or completed

22   outside the Central District of California, defendant knowingly,

23   voluntarily, and intelligently waives, relinquishes, and gives up:

24   (a) any right that defendant might have to be prosecuted only in the

25   district where the offenses to which defendant is pleading guilty

26   were committed, begun, or completed; and (b) any defense, claim, or

27   argument defendant could raise or assert based upon lack of venue

28   with respect to the offenses to which defendant is pleading guilty.

EXHIBIT "6"

1              WAIVER OF APPEAL OF CONVICTION

2        23.   Defendant understands that, with the exception of an appeal

3   based on a claim that defendant's guilty pleas were involuntary, by

4   pleading guilty defendant is waiving and giving up any right to

5   appeal defendant's convictions on the offenses to which defendant is

6   pleading guilty.  Defendant understands that this waiver includes,

7   but is not limited to, arguments that the statutes to which defendant

8   is pleading guilty are unconstitutional, and any and all claims that

9   the statement of facts provided herein is insufficient to support

10  defendant's pleas of guilty.

11         LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

12       24.   Defendant agrees that, provided the Court imposes a total

13  term of imprisonment on all counts of conviction of no more than 23

14  years, defendant gives up the right to appeal all of the following:

15  (a) the procedures and calculations used to determine and impose any

16  portion of the sentence; (b) the term of imprisonment imposed by the

17  Court; (c) the fine imposed by the Court, provided it is within the

18  statutory maximum; (d) to the extent permitted by law, the

19  constitutionality or legality of defendant's sentence, provided it is

20  within the statutory maximum; (e) the amount and terms of any

21  restitution order, provided it requires payment of no more than

22  $22,800,000; (f) the term of probation or supervised release imposed

23  by the Court, provided it is within the statutory maximum; and

24  (g) any of the following conditions of probation or supervised

25  release imposed by the Court: the conditions set forth in General

26  Order 18-10 of this Court; the drug testing conditions mandated by 18

27  U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and drug use

28  conditions authorized by 18 U.S.C. § 3563(b)(7).

                                14

25.   The USAO agrees that, provided all portions of the sentence are at or below the statutory maximum specified above, the USAO gives up its right to appeal any portion of the sentence, with the exception that the USAO reserves the right to appeal the amount of restitution ordered if that amount is less than $22,800,000.

RESULT OF WITHDRAWAL OF GUILTY PLEA

26.   Defendant agrees that if, after entering guilty pleas pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty pleas on any basis other than a claim and finding that entry into this plea agreement was involuntary, then (a) the USAO will be relieved of all of its obligations under this agreement; and (b) should the USAO choose to pursue any charge that was not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

EFFECTIVE DATE OF AGREEMENT

27.   This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

BREACH OF AGREEMENT

28.   Defendant agrees that if defendant, at any time after the signature of this agreement and execution of all required certifications by defendant, defendant's counsel, and an Assistant

15

EXHIBIT "6"

United States Attorney, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached. All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing. If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered guilty pleas pursuant to this agreement, defendant will not be able to withdraw the guilty pleas, and (b) the USAO will be relieved of all its obligations under this agreement.

29. Following the Court's finding of a knowing breach of this agreement by defendant, should the USAO choose to pursue any charge that was not filed as a result of this agreement, then:

a. Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

b. Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

c. Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under

16

EXHIBIT "6"

the United States Constitution, any statute, Rule 410 of the Federal
Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal
Procedure, or any other federal rule, that the statements or any
evidence derived from the statements should be suppressed or are
inadmissible.

### COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES

### OFFICE NOT PARTIES

30.  Defendant understands that the Court and the United States
Probation and Pretrial Services Office are not parties to this
agreement and need not accept any of the USAO's sentencing
recommendations or the parties' agreements to facts or sentencing
factors.

31.  Defendant understands that both defendant and the USAO are
free to: (a) supplement the facts by supplying relevant information
to the United States Probation and Pretrial Services Office and the
Court, (b) correct any and all factual misstatements relating to the
Court's Sentencing Guidelines calculations and determination of
sentence, and (c) argue on appeal and collateral review that the
Court's Sentencing Guidelines calculations and the sentence it
chooses to impose are not error, although each party agrees to
maintain its view that the calculations in paragraph 18 are
consistent with the facts of this case.  While this paragraph permits
both the USAO and defendant to submit full and complete factual
information to the United States Probation and Pretrial Services
Office and the Court, even if that factual information may be viewed
as inconsistent with the facts agreed to in this agreement, this
paragraph does not affect defendant's and the USAO's obligations not
to contest the facts agreed to in this agreement.

17

EXHIBIT "6"

32.   Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty pleas, and defendant will remain bound to fulfill all defendant's obligations under this agreement.  Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

<u>NO ADDITIONAL AGREEMENTS</u>

33.   Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

////

////

////

////

////

////

18

PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

34. The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF
CALIFORNIA

NICOLA T. HANNA
United States Attorney

_____     4/12/2020
GREGORY W. STAPLES           Date
Assistant United States Attorney

_____     03/18/2020
KENT R.E. WHITNEY            Date
Defendant

_____     3/20/2020
KENNETH P. WHITE            Date
Attorney for Defendant Kent R.E.
Whitney

CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety. I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences

19

EXHIBIT "6"

1  of entering into this agreement.  No promises, inducements, or

2  representations of any kind have been made to me other than those

3  contained in this agreement.  No one has threatened or forced me in

4  any way to enter into this agreement.  I am satisfied with the

5  representation of my attorney in this matter, and I am pleading

6  guilty because I am guilty of the charges and wish to take advantage

7  of the promises set forth in this agreement, and not for any other

8  reason.

9  _____          03/18/2020

10 KENT R.E. WHITNEY                         Date
   Defendant

11

12

13

14

15              CERTIFICATION OF DEFENDANT'S ATTORNEY

16     I am Kent Whitney's attorney.  I have carefully and thoroughly

17 discussed every part of this agreement with my client.  Further, I

18 have fully advised my client of his rights, of possible pretrial

19 motions that might be filed, of possible defenses that might be

20 asserted either prior to or at trial, of the sentencing factors set

21 forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines

22 provisions, and of the consequences of entering into this agreement.

23 To my knowledge: no promises, inducements, or representations of any

24 kind have been made to my client other than those contained in this

25 agreement; no one has threatened or forced my client in any way to

26 enter into this agreement; my client's decision to enter into this

27 agreement is an informed and voluntary one; and the factual basis set

28

                                 20

Scanned with CamScanner

EXHIBIT "6"

1  forth in this agreement is sufficient to support my client's entry of

2  guilty pleas pursuant to this agreement.

3

                                          3/20/2020
                                          _____
4  KENNETH P. WHITE                       Date
   Attorney for Defendant Kent R.E.
5  Whitney

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT "6"

**PROOF OF SERVICE**

**STATE OF CALIFORNIA, COUNTY OF ORANGE**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Orange, State of California. My business address is 3200 Park Center Drive, Suite 250, Costa Mesa, CA 92626.

On **1/4/2023,** I served true copies of the following document(s) described as

**NOTICE OF MOTION AND MOTION FOR ENTRY OF DEFAULT JUDGMENT; DECLARATIONS OF SHARON OH-KUBISCH AND ROBERT P. MOSIER IN SUPPORT THEREOF** on the interested parties in this action as follows:

**(X) (BY COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")) –** Pursuant to United States District Court, Central District of California, Local Civil Rule 5-3, the foregoing document will be served by the court via NEF and hyperlinked to the document. On **1/4/2023**, I checked the CM/ECF docket for this case and determined that the aforementioned person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated.

**(X) (BY U.S. MAIL).** I enclosed the document(s) in a sealed envelope or package and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with the practice of Smiley Wang-Ekvall, LLP for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with USPS in a sealed envelope with postage fully prepaid. I am a resident or employed in the county where the mailing occurred. The envelope was placed in the mail at Costa Mesa, California.

**() (BY E-MAIL).** By scanning the document(s) and then e-mailing the resultant pdf to the e-mail address indicated above per agreement. Attached to this declaration is a copy of the e-mail transmission.

**( ) STATE** I declare under the penalty of perjury under the laws of the State of California that the above is true and correct.

**(X) FEDERAL** I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on January 4, 2023 at Costa Mesa, California.

/s/ *James Chung*
_____
James Chung

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

**SERVICE LIST**

**BY COURT VIA NOTICE OF ELECTRONIC FILING ("NEF"):**

Kyra E Andrassy
kandrassy@swelawfirm.com,jchung@swelawfirm.com,lgarrett@swelawfirm.com,gcruz@swelawfirm.com

Sharon Oh-Kubisch
sokubisch@swelawfirm.com,jchung@swelawfirm.com,lgarrett@swelawfirm.com,gcruz@swelawfirm.com

Michael Lewis Simon
msimon@swelawfirm.com,jchung@swelawfirm.com,lgarrett@swelawfirm.com,gcruz@swelawfirm.com

**BY U.S. MAIL:**
Matthew Shelton
5500 N. Military Trail, Apt. 430
Boca Raton, FL 33496-3567

**VIA COURIER:**

Honorable James V. Selna
411 West 4th Street,
Santa Ana, Courtroom 10C
**Chambers copy box on the 10th Floor**

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002